SEYMOUR MANUFACTURING
COMPANY, INC., Appellant–
Plaintiff,

v.

COMMERCIAL UNION INSURANCE
COMPANY, American Employers' In-
surance Company, Indiana Insurance
Company and the Employers' Fire In-
surance Company, Appellees–Defen-
dants.

No. 03A05–9405–CV–195.

Court of Appeals of Indiana,
Fifth District.

April 6, 1995.

Rehearing Denied June 20, 1995.

Patrick W. Harrison, Beck & Harrison, Columbus, for appellant.

Thomas J. Belcher, Kelley, Belcher & Brown, Bloomington, Timothy J. Vrana, Sharpnack, Bigley, David & Rumple, Columbus, for appellees.

## OPINION

BARTEAU, Judge.

In this interlocutory appeal, brought under Ind.Appellate Rule 4(B)(6), Seymour Manufacturing Company (SMC) appeals the trial court's denial of partial summary judgment on the issue of whether SMC's insurers have a duty to defend SMC against claims arising from SMC's alleged mishandling of waste materials. We heard oral argument on March 6, 1995.

### FACTS

In 1968, SMC entered the business of reclamation and disposal of solid waste at a facility at Freeman Field in Seymour. SMC stored, treated and disposed of waste generated by manufacturers. In 1980, the United States Environmental Protection Agency filed suit against SMC[1] under the Resource Conservation and Recovery Act, 42 U.S.C. § 6973, and the Clean Water Act, 33 U.S.C. § 1321. The EPA seeks to recover response costs[2] and alleges that SMC stored scores of waste barrels at the site and improperly maintained the storage barrels, many of which had deteriorated and were leaking contaminants, and that SMC allowed hazardous materials to spill, leak or ooze from the containers, causing soil contamination, fumes, fires and odor problems.

SMC notified the insurance companies of the actions brought against it and demanded defense and indemnity.[3] The insurance com-

panies investigated and determined that the claims were not covered under the policies. The insurers refused to defend SMC. SMC sued the insurers for declaratory judgment.

### ISSUE

Whether the trial court erred in denying partial summary judgment on the issue of whether the insurance policies create a duty under which the insurance companies must defend SMC.

### DISCUSSION

The parties argue three points on appeal: (1) whether there has been an occurrence that triggers coverage under the policies; (2) whether the response costs sought by the EPA are "property damage" as defined in the insurance policies; and (3) whether coverage is excluded under the pollution exclusion in each policy. We find that the question rising from the pollution exclusions is dispositive of this matter, and that we need not discuss the remaining arguments. Even if we assume that the claims against SMC allege an occurrence under the policies, and assume that the damages sought in the claims are "property damage" as contemplated in the policies, the pollution exclusions still preclude coverage.

### Summary Judgment

 In summary judgment proceedings, the party moving for summary judgment must show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Once the movant establishes that no genuine issue of fact exists, the party opposing summary judgment must set forth specific facts indi-

---

1. The EPA also named a manufacturer who had delivered waste materials to SMC as a defendant. The manufacturer, in turn, filed an action against SMC to recover any damages for which it would be held liable due to SMC's mishandling of the waste.

2. Response costs include paying for, and reimbursing the EPA for, cleaning up the contaminating material as well as costs generated prospectively under an injunction.

3. Employers Fire Insurance Company issued one policy to SMC, and each of the remaining insurers issued multiple policies to SMC, providing coverage during various periods of time. The parties agree that all of the policies share similar language relevant to this appeal.

Also, SMC conceded at oral argument that its claim against Indiana Insurance Company fails on its merits and agreed to judgment in favor of Indiana Insurance. Therefore, our opinion is limited to only the remaining insurers.

cating that there is a genuine issue in dispute. If the non-moving party fails to meet this burden, summary judgment in favor of the moving party is appropriate. *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, 18, *trans. denied.* Further, the party moving for summary judgment must designate to the trial court all parts of the matters included in the record that it relies on for the motion. The opposing party likewise must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." Ind.Trial Rule 56(C). Any doubt as to the existence of a factual issue should be resolved against the moving party, construing all properly asserted facts and reasonable inferences in favor of the non-movant. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630, 633.

■■■ Summary judgment based upon construction of an insurance contract is a determination, as a matter of law, that the contract is unambiguous and that it is unnecessary to resort to the rules of contract construction in order to ascertain the contract's meaning. *Terre Haute First National Bank v. Pacific Employers Ins. Co.* (1993), Ind.App., 634 N.E.2d 1336, 1337. The provisions of an insurance contract are subject to the same rules of construction as are other contracts, and the construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Id.*

### Duty to Defend

■■■ An insurer's duty to defend its insureds against suit is broader than its coverage liability or duty to indemnify. *Trisler v. Indiana Ins. Co.* (1991), Ind.App., 575 N.E.2d 1021, 1023. However, the insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. *Id.* If the pleadings disclose that a claim is clearly excluded under the policy, no defense is required. *Id.*

■■■ The insurer may go beyond the face of the complaint and refuse to defend based

upon the factual underpinnings of the claims against its insured. *Terre Haute First National Bank,* 634 N.E.2d at 1339. "Accordingly, in evaluating the factual basis of a claim and the insurer's concomitant duty to defend, this court may properly consider the evidentiary materials offered by the parties to show coverage." *Trisler,* 575 N.E.2d at 1023. The insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. *Terre Haute National Bank,* 634 N.E.2d at 1339. "It is the nature of the claim and not its merits that determines the duty to defend." *Id.* Thus, to determine if the insurers have a duty to defend SMC, we must focus upon the claims brought against SMC.

The EPA suit against SMC seeks recovery for the amounts the United States has expended in dealing with the Freeman Field site, and also seeks injunctive relief that creates additional prospective expenses. The EPA characterizes its claims against SMC as:

> [A] civil action instituted pursuant to Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 6973 for injunctive relief to eliminate an imminent and substantial threat to human health and the environment and for reimbursement of costs incurred by Plaintiff under Section 311 of the Clean Water Act ("CWA"), 33 U.S.C. 1321.

The allegations in the EPA complaint allege that the waste at the Freeman Field facility was spilled or otherwise leaked or oozed out of the storage containers and contaminated the environment. The insurers argue that the policies provide no coverage for the EPA's claims because they are excluded from coverage under the pollution exclusions. SMC contends that the exclusions are ambiguous and must be construed against the insurers.

### Pollution Exclusions

With the exception of Commercial Union policy number 8306–001, the pollution exclusions in all of the insurance policies preclude

coverage for damages caused by a release of pollution that is not sudden. The pollution exclusion in Commercial Union policy number 8306–001 does not contain an exception for a sudden release of pollution. We will discuss Commercial Union policy number 8306–001 separately from the remaining policies at issue.

### Sudden

■■■ Language substantially similar to the following pollution exclusion is used in all of the insurance policies except the Employers Fire policy and Commercial Union policy number 8306–001:

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden or accidental.

The Employers Fire insurance policy provision states that the policy does not apply to:

bodily injury or property damages arising out of pollution or contamination (1) caused by oil, or (2) caused by the discharge or escape of any other pollutants or contaminants, unless such discharge or escape results from a sudden happening during the policy period, neither expected nor intended from the standpoint of the insured.

All of the exclusions contain an exception for a "sudden" release of pollution. The parties agreed during oral argument that, if we find that the claims against SMC allege that an occurrence caused a sudden release of pollution at the Freeman Field site, the insurers that issued these policies must defend SMC.

■■■ SMC argues that the term "sudden," which is undefined in the policies, is ambiguous and therefore must be construed against the insurers. Words in an insurance contract should be given their plain and ordinary meaning whenever possible. *Lexington*

*Ins. Co. v. American Healthcare Providers* (1993), Ind.App., 621 N.E.2d 332, 335, *trans. denied.* An exclusion in a contract will be given effect only if it clearly and unmistakenly brings within its scope the particular act or omission that will effectuate the provision. *Id.* An insurer may limit its liability for a particular matter so long as the exclusion is plainly expressed in the contract. *Delaplane v. Francis* (1994), Ind.App., 636 N.E.2d 169, 171, *trans. denied.* Where the language of an insurance policy is ambiguous, in that it is susceptible to more than one reasonable interpretation, the court must construe the language in favor of the insured. *Eli Lilly & Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467, 470.

A number of jurisdictions that have considered this issue have found that the term "sudden" is susceptible to more than one meaning, rendering the pollution exclusion ambiguous. *See New Castle Co. v. Hartford* (3d Cir.1991), 933 F.2d 1162, 1195 n. 60, and cases cited therein. Those courts have found the term is ambiguous because dictionaries define "sudden" both with and without a "temporal" [4] quality. SMC argues that the mere fact that jurisdictions disagree as to the meaning of the term "sudden" supports its position that the policy provision is ambiguous.

We are confronted here with two contrasting lines of cases: one holding that the word "sudden" is ambiguous and thus meaning "unexpected," and another holding that the word "sudden" always has a temporal quality and thus means "abrupt or brief." ... [W]e cannot help but view such a division as at least suggesting that the term "sudden" is susceptible of more than one reasonable definition.

*Hartford,* 933 F.2d at 1196. But, the mere existence of a controversy as to the meaning of an insurance contract does not establish an ambiguity. *Harden v. Monroe Guaranty Ins. Co.* (1993), Ind.App., 626 N.E.2d 814, 817, *trans. denied.* There is no ambiguity unless reasonably intelligent persons upon reading the policy would honestly differ as to

---

**4.** *The American Heritage Dictionary* (2d college ed. 1983) defines temporal as "Of or limited by time."

its meaning. *Illinois Farmers Ins. v. Tyson* (1994), Ind.App., 634 N.E.2d 1355, 1358, *trans. dismissed.*

Much of the disagreement among the jurisdictions centers upon whether the term "sudden" applies to the cause of the release of pollutants, the damage sustained by the release, or the release of the pollutants itself. We find that Indiana law is in accord with those jurisdictions that have found the pollution exclusion unambiguous by focusing upon the circumstances of the release of the pollutants.

> The sudden event to which the exception in the pollution exclusion clause applies concerns neither the cause of the release of a pollutant nor the damage caused by the release. It is the release of the pollutants itself that must have occurred suddenly.... The exception thus focuses on the circumstances of the release. In deciding whether there was an occurrence, on the other hand, the focus of the inquiry is on the property damage, asking whether it was expected or intended from the insured's point of view. Courts that have failed to appreciate this distinction have led themselves to identify an ambiguity in the policy language that does not exist.

*Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.* (1990), 407 Mass. 675, 555 N.E.2d 568, 571; *see also, Waste Management of Carolinas, Inc. v. Peerless Ins. Co.* (1986), 315 N.C. 688, 340 S.E.2d 374, *reh'g denied.* Courts adopting this approach emphasize the temporal quality of abruptness in the word "sudden," requiring the release of pollutants to be both unexpected and on brief notice. *See Fischer & Porter Co. v. Liberty Mut. Ins. Co.* (D.Penn.1986), 656 F.Supp. 132; *American Motorists Ins. Co. v. General Host Corp.* (D.Kan., 1987), 667 F.Supp. 1423, *aff'd* (10th Cir.1991), 946 F.2d 1482, *vacated in part on reh'g,* 946 F.2d 1489.

This is in harmony with Indiana law concerning whether an alleged event rises to an occurrence under an insurance policy. *See Trisler,* 575 N.E.2d at 1024. While we determine whether an occurrence has been alleged by focusing on whether the insured expected or intended the *resulting damage, id.,* our focus turns to the circumstances of the pollu-tion-releasing *event* when we determine whether the contamination occurred suddenly.

Two cases applying Indiana law are consistent with this approach. *Barmet of Ind., Inc. v. Security Ins. Group* (1981), Ind.App., 425 N.E.2d 201, concerned a situation in which gases frequently and unintentionally escaped from a manufacturing plant when its pollution control system failed. Although the pollution control system failed frequently, the manufacturer could not predict when the gases would escape. One release of gases obscured visibility on a nearby highway, causing a collision. The insurer denied coverage based upon a pollution exclusion in the policy excluding coverage for the release of pollution that was not sudden. We affirmed the trial court's determination that policy coverage was precluded under the pollution exclusion because the frequency of the releases rendered the emissions not sudden even though they remained unpredictable. *Id.* at 203.

In a case dealing with circumstances similar to the case at bar, the Seventh Circuit considered whether a pollution exclusion precluded coverage for damages caused by the release of contaminants from transformers sent to a disposal facility. *Cincinnati Ins. Co. v. Flanders Electric Motor Serv., Inc.* (7th Cir.1994), 40 F.3d 146, *reh'g denied.* The insurer denied coverage of response costs under a pollution exclusion that excluded coverage caused by a release of pollution except when the release was "sudden." The Seventh Circuit, applying Indiana law, determined that the term "sudden" incorporates qualities of unexpectedness and abruptness.

> We agree that "sudden" connotes an unexpected and unintended event or occurrence. However, "sudden" can also mean "abrupt" or "quick," and we believe that in the context of the pollution exclusion clause, "sudden" must be construed as meaning both "unexpected" and "abrupt." ... "Sudden" must necessarily mean more than simply "unexpected" or "unintended" if it is to be given any independent significance.

*Cincinnati,* 40 F.3d at 152.

The Seventh Circuit's reasoning is bolstered by our supreme court's analysis of the

term "sudden" in the context of Indiana's Strict Product Liability Act.

"[S]udden" contemplates both the elements of time during which the damage occurs, as something marked by abruptness or haste, and the element of surprise in relation to the damage.

*Cincinnati,* 40 F.3d at 153 (citing *Reed v. Central Soya Co., Inc.* (1993), Ind., 621 N.E.2d 1069, 1075); *accord, Martin Rispens & Son v. Hall Farms, Inc.* (1993), Ind., 621 N.E.2d 1078, 1089, *reh'g denied* (sudden damage "must have happened quickly, unexpectedly and be of a calamitous nature.")

■ Under the "sudden" exception to the pollution exclusions, the policies provide coverage only if the claims against SMC, coupled with the facts ascertained through reasonable investigation, allege that the release of pollutants occurred unexpectedly, quickly, and abruptly. We find that the claims against SMC do not allege a sudden release pollution.

The claims against SMC allege that the pollution leaked and oozed out of deteriorating storage barrels. Investigations show that spills also occurred due to the overflow of unsealed barrels as rainwater filled the barrels beyond capacity. These circumstances lack the temporal qualities of abruptness, quickness, and unexpectedness embodied in the term "sudden." The claims do not allege the damage was caused by a sudden release of pollutants, and the pollution exclusions preclude coverage under the policies.

### *Commercial Union Policy No. 8306–001*

■ The pollution exclusion in Commercial Union policy number 8306–001 is identical to the exclusion in the other policies, but does not contain the exception for a "sudden" release of pollution. The policy provision excludes coverage for damages arising from the release of pollutants into the environment, regardless of whether the release was quick, abrupt and unexpected.

Indiana has yet to interpret this exclusion, but jurisdictions that have considered this pollution exclusion have determined it to be clear, unambiguous, and enforceable. *See Union Mut. Fire Ins. Co. v. Hatch* (D.N.H.

1993), 835 F.Supp. 59, 65; *Vantage Development Corp. v. American Environment Tech. Corp.* (1991), 251 N.J.Super. 516, 598 A.2d 948, 953; *Budofsky v. Hartford Ins. Co.* (N.Y.Sup.Ct.1990), 147 Misc.2d 691, 556 N.Y.S.2d 438. In the absence of the "sudden" exception, the exclusion is unambiguous to ordinary persons and meets the insured's objectively reasonable expectations. *Guilford Indus. Inc. v. Liberty Mut. Ins. Co.* (D.Me.1988), 688 F.Supp. 792, *aff'd,* (1st Cir. 1989), 879 F.2d 853; *Alcolac Inc. v. California Union Ins. Co.* (D.Md.1989), 716 F.Supp. 1546.

We likewise find this exclusion to be unambiguous, and we must enforce its plain and ordinary meaning. *Lexington Ins. Co.,* 621 N.E.2d at 335. This exclusion is plainly expressed and is enforceable to limit the insurer's liability. *Delaplane,* 636 N.E.2d at 171. Commercial Union policy number 8306–001 provides no coverage for the claims for damages arising from the pollution released at the Freeman Field site.

### *CONCLUSION*

Even if we assume that (1) the gradual release of pollutants is an occurrence, and (2) response costs are property damage as contemplated by the parties, the pollution exclusions preclude coverage under the policies issued to SMC.

While this opinion does not address the policies issued to SMC by Indiana Insurance Company, which is also a party to this appeal, SMC conceded at oral argument that the Indiana Insurance policies provide no coverage for the claims against SMC.

Therefore, the Order of the trial court denying SMC's Motion for Partial Summary Judgment is AFFIRMED, and the trial court is hereby Ordered to enter Summary Judgment in favor of the appellees.

BAKER and SULLIVAN, JJ., concur.