**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,**
Plaintiff,

v.

**Kim GASTINEAU, Fleet Mortgage Corporation, Katrina Johnson, Julie Trimble and Dan Negele, Defendants.**

**No. IP 96–999–C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 7, 1998.

· Christopher P. Hamilton, Landau Omahana & Kopka, Carmel, IN, for Plaintiff.

Julie L. Michaelis, Michael Rabinowitch, Wooden McLaughlin, Indianapolis, IN, for Defendants.

*ENTRY GRANTING DEFENDANT'S MO-
TION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING PLAIN-
TIFF'S MOTION FOR SUMMARY
JUDGMENT*

BARKER, Chief Judge.

Plaintiff General Accident Insurance Company of America moves for summary judg-

ment on its claim that it has no obligation to indemnify or defend Defendant Fleet Mortgage Corporation in a suit brought by an employee alleging claims of sex discrimination. Defendant Fleet moves for partial summary judgment on the ground that Plaintiff owes it both a duty to indemnify and to defend. For the reasons discussed herein, we find that Plaintiff's motion for summary judgment must be *denied* and Defendant's motion for partial summary judgment must be *granted.*

## Statement of Facts

Defendant Fleet Mortgage Corporation (Fleet) purchased an insurance policy from Plaintiff General Accident Insurance Company of America (GAIC). That policy was in effect from April 1, 1991 to April 1, 1992, and was renewed in April 1992. On May 27, 1994, Kim Gastineau (Gastineau), a Fleet employee, filed a Complaint against Fleet and three Fleet employees: Katrina Johnson, Julie Trimble and Dan Negele. Gastineau alleged that he had been discriminated against on the basis of sex by Katrina Johnson while he was a loan officer at Fleet. Gastineau's case was tried to a jury and a verdict was entered for Fleet on July 29, 1996.

On July 16, 1996, GAIC filed a declaratory action alleging that it owed neither a duty to insure nor a duty to defend Fleet in the Gastineau action.[1] Fleet counterclaims that, pursuant to its insurance policy, GAIC owes it a duty to insure and a duty to defend in the Gastineau suit.

GAIC moves for summary judgment on three main grounds: first, Gastineau's claims against Fleet were precluded from coverage by a "co-employee exclusion" provision in the insurance policy; second, Gastineau did not allege a "bodily injury" as defined by the policy and Indiana law; and third, even if

Gastineau did allege bodily injury, it did not "arise out of an occurrence" as required by the policy. Fleet, of course, opposes these arguments and moves for partial summary judgment on the same grounds.[2]

## Discussion

### A. Co–Employee Exclusion

GAIC first argues that it was not obligated to indemnify or defend Fleet in the Gastineau action because the Fleet policy contained a "co-employee exclusion" which precluded sex discrimination claims from coverage. GAIC maintains that the applicable exclusion provides as follows:

2. Exclusions.

This insurance does not apply to:

e. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; ....

Policy at 2 (Attached to Complaint).

GAIC argues that because Gastineau's complaint alleged sex discrimination in his employment, it necessarily arose out of and in the course of his employment by Fleet and, thus, Gastineau's claims were expressly excluded from the policy's scope of coverage.

Fleet maintains that this exclusionary language was not in effect at the time of the alleged harassment. Fleet references an Endorsement to the policy, entitled "Stopgap Coverage Endorsement," which states:

Exclusion e. of Coverage A (Section 1) is deleted and replaced by the following:

In consideration of the premium herein provided, it is agreed that if under any circumstances it is determined that any employee of yours who is reported and declared under the Workers' Compensation Law or Laws in a state designated in the schedule is injured in the course of

---

1. In its motion for partial summary judgment, Fleet asserts that none of the individual defendants in this action has been served by GAIC and that GAIC represented that it intends to dismiss the individual defendants from this action. GAIC did not dispute this contention and the Court's records reflect that GAIC served Fleet and no other defendant. Accordingly, GAIC's claims against Kim Gastineau, Katrina Johnson,

Julie Trimble and Dan Negele are *dismissed with prejudice.*

2. In its brief in support of its motion for partial summary judgment, Fleet asserts that it does not seek summary judgment on the issue of damages because it contends that it continues to accumulate damages arising from GAIC's alleged breach.

their employment but is not entitled to receive (or elects not to accept) the benefits provided by the aforementioned Law, then this policy shall cover your legal liability for such bodily injury, disease, or death.

Policy Endorsement. Fleet contends that this provision superseded the language cited by GAIC and, therefore, Gastineau's claims are not precluded from coverage.[3]

GAIC did not respond to Fleet's contention that the Stop Gap Endorsement eliminated the "arising out of and in the course of employment" exclusionary provision, notwithstanding that GAIC submitted an "Omnibus Response" to Fleet's arguments. After examining the policy, we can only conclude that GAIC's lack of response reflected its decision not to contest the incontestable: the "arising out of and in the course of employment" section was expressly deleted by the Stop Gap Endorsement to the Policy. There is no question that Fleet paid premiums for coverage at its Indiana locations. *See* Douglas Shapiro Aff. ¶¶ 4–5. And GAIC does not contend that any of the exclusions outlined in the Stopgap Coverage Endorsement apply to Gastineau's claims against Fleet. Accordingly, GAIC's motion for summary judgment on the ground that Gastineau's claims against Fleet were expressly excluded from the scope of the insurance policy must be *denied.*

### B. *"Bodily Injury"*

GAIC next argues that Gastineau's complaint did not allege bodily injury as defined by the policy. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Policy at 9. GAIC contends that it had no duty to investigate Gastineau's claims beyond the face of the complaint and that because Gastineau alleged only "emotional and psychological damage" resulting from his alleged sexual discrimination, there was no bodily injury and, thus, no duty to Fleet.

We disagree. Under Indiana law, an insurance company's duty to defend its insured is broader than its duty to indemnify. *Trisler v. Indiana Ins. Co.,* 575 N.E.2d 1021, 1023 (Ind.App.1991). In *Transamerica Insurance Services v. Kopko,* the Indiana Supreme Court stated that "[t]he duty to defend is determined solely by the nature of the complaint." 570 N.E.2d 1283, 1285 (Ind. 1991). This ruling in *Kopko* has been described as a "dramatic departure" from prior Indiana case law, which had consistently directed that the duty to defend is not determined solely by the nature of the complaint, but also by reasonable investigation. *See Fidelity & Guaranty Ins. Underwriters, Inc. v. Brown Co.,* 25 F.3d 484, 489–90 (7th Cir. 1994) (discussing *Kopko* and its problematic characterization of the holding in *Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d 1100 (Ind. App.1980)); *see also Mallon,* 409 N.E.2d at 1101 (holding that "traditional view" of limiting duty to defend to allegations in a complaint "does not fit well modern concept of notice pleading"). Although *Kopko* 's holding constricting the duty to defend to the allegations set out in the complaint has been relied upon on one occasion by the Indiana Court of Appeals, *see, e.g., United Services Automobile Assoc. v. Caplin,* 656 N.E.2d 1159, 1162 (Ind.App.1995), in all other cases where *Kopko* has not been criticized, it has been largely ignored. *See Monroe Guaranty Ins. Co. v. Monroe,* 677 N.E.2d 620, 624 (Ind.App.1997) (expressly refusing to follow *Kopko* and holding that "as a matter of law the Insurer has a duty to conduct a reasonable investigation into the facts underlying the complaint before it may refuse to defend the complaint."); *Indiana Farmers Mut. Ins. Co. v. Ellison,* 679 N.E.2d 1378, 1381 (Ind.App.1997) ("The duty to defend is determined from the allegations of the complaint and from the facts known or ascertainable by the insurer after an investigation has been made."), *transfer denied,* (Ind. Oct. 16, 1997); *Wayne Town-*

---

**3.** Fleet also argues that, even if the exclusionary language had been in effect, hostile work environment sexual harassment is predominantly a non-work-related event and, thus, cannot be considered as having occurred in the course of employment. Because we find that the exclusionary provision cited by GAIC was not a part of the policy issued to Fleet, we need not reach the issue of whether sexual harassment "arises out of and in the course of employment" for purposes of evaluating insurance coverage.

*ship Bd. of School Comm'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205, 1208 (Ind.App.1995) ("the insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation."), *trans. denied,* (Ind. Jan. 31, 1996); *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.,* 634 N.E.2d 1336, 1339 (Ind.App.1993) ("the insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation."); *Trisler,* 575 N.E.2d at 1023 ("The insurer's duty to defend is determined from the allegations of the complaint coupled with those facts known to or ascertainable by the insurer after reasonable investigation."); *National Fire and Cas. Co. v. West,* 107 F.3d 531, 535 (7th Cir.1997) (citing and quoting in accord, *Trisler,* " 'The insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation.' "); *Ticor Title Ins. Co. of Cal. v. FFCA/IIP 1988 Property Co.,* 898 F.Supp. 633, 638 (N.D.Ind.1995) (" 'The insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation.' ") (quoting *Seymour Mfg. Co. v. Commercial Union Ins. Co.,* 648 N.E.2d 1214, 1217 (Ind. App.1995)).

The Seventh Circuit recently "tangled with the variously framed pronouncements of the Indiana courts on this issue." *Federal Ins. Co. v. Stroh Brewing Co.,* 127 F.3d 563, 565 (7th Cir.1997). It stated that "[w]hile Indiana's courts may use differing language to describe the standard, we believe there is essentially only one standard—that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." *Stroh Brewing Co.,* 127 F.3d at 563. Accordingly, the issue we next address is whether Gastineau's allegations, if true, would have triggered coverage under Fleet's policy; in other words, if true, did Gastineau's allega-

tions establish bodily injury, as defined by the policy and Indiana law.[4]

We believe they do. In *Wayne Township Board of School Commissioners v. Indiana Insurance Company,* the Indiana Court of Appeals examined the question whether emotional damage arising from child molestation is " 'bodily injury, sickness or disease sustained during the policy period, including death at any time resulting therefrom.' " 650 N.E.2d at 1210. In *Wayne Township,* a student alleged that her school principal molested her. The student did not allege that the principal's acts physically injured her (she alleged that the principal had made her touch him while sitting on his lap); the student alleged that she sustained emotional damage as a result of the molestation. *Wayne Township,* 650 N.E.2d at 1210. The insurance company in that case also refused to defend or indemnify the school district because it maintained there was no allegation of bodily injury. The *Wayne Township* court acknowledged that "Indiana law recognizes that emotional injury that does not arise from bodily contact is not bodily injury as contemplated in [insurance] policies." 650 N.E.2d at 1210. Nonetheless, the court held that "bodily touching is inherent to child molestation and resulting emotional injury suffered by the victim of child molestation is bodily injury." *Wayne Township,* 650 N.E.2d at 1210.

In his complaint, Gastineau alleged that "[h]is loan processor ... sexually harassed him for a period of over one year until he was fired in November of 1992. Her conduct had the purpose or effect of unreasonably interfering with his work performance and also created an intimidating, hostile, and offensive working environment, in violation of Title VIII [sic] ... and EEOC Guidelines contained in 29 CFR § 1604.11 et seq." Gastineau Complaint ¶ 2.

■ The Seventh Circuit has stated that it is not always easy to know what kind of conduct constitutes a hostile work environment, but it has stated that, actionable con-

---

4. GAIC also contends that a hostile work environment claim is not within the scope of Fleet's policy because it involves intentional behavior and, therefore, cannot "arise out of an occurrence." That argument is addressed *infra*.

duct typically includes *"sexual assaults, other physical contact,* whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995) (emphasis added). In addition, the EEOC Guidelines specifically cited in Gastineau's complaint state:

§ 1604.11 Sexual harassment.

(a) Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or *physical conduct* of a sexual nature constitute sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a) (emphasis added). Given the nature of the hostile work environment claim alleged against Fleet in Gastineau's complaint, as well as the specific EEOC regulation provision cited therein, we believe that the *Wayne Township* reasoning applies perforce to this case. Gastineau's complaint included allegations of sexual harassment lasting for over a year, thus, creating a severe and pervasively hostile working environment. In addition, Gastineau specifically cited to an EEOC Regulation specifying physical conduct as a form of harassment engendering a hostile work environment. Not every hostile work environment case necessarily involves physical contact, but we believe that bodily contact is sufficiently inherent in hostile work environment claims that, without conducting any reasonable investigation into Gastineau's allegations, GAIC's duty to defend Fleet was triggered. *Cf. Wayne Township,* 650 N.E.2d at 1210.

Moreover, Gastineau testified at trial that his loan processor did, in fact, physically assault him as part of her course of harassing him.[5] For example, Gastineau testified that, at least on one occasion, his loan processor would "stick her foot in [his] crotch, and with her shoes off, attempt to manipulate [his] penis with her toes." Gastineau Testimony at 80. This testimony (if it had been believed by the jury) would have brought Gastineau's allegations of emotional and psychological damage resulting from his harassment squarely within the holding in *Wayne Township, supra.* Accordingly, we find that GAIC's motion for summary judgment premised on the ground that Gastineau's complaint did not allege bodily injury within the definition of the policy and Indiana law must be *denied* and Fleet's motion for partial summary judgment on this ground must be *granted.*

## C. *"Arising Out of an Occurrence"*

GAIC next argues that it is obligated neither to indemnify nor to defend Fleet as a result of the Gastineau claims because Gastineau did not allege a bodily injury "arising out of an occurrence" as defined by the policy. Fleet's insurance policy extends coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [GAIC] will have the right and duty to defend any 'suit' seeking those damages." Policy at 1.[6]

The insurance policy applies to "bodily injury" only if it is "caused by an 'occurrence' that takes place in the coverage territory ... during the policy period." Policy at 1. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy at 11.

▪ In the context of insurance coverage, Indiana law defines an accident to mean " 'an unexpected happening without an intention

---

5. Accordingly, if we were to follow the majority of Indiana courts and find that GAIC had a duty to conduct a reasonable investigation into Gastineau's allegations in order to determine whether it has a duty to defend, in this way too, GAIC's duty would have been triggered.

6. "Suit" is defined by the policy as "a civil proceeding in which damage because of 'bodily injury' ... to which this insurance applies are alleged." GAIC does not dispute that if it is obligated to defend Fleet against a single claim by Gastineau, it must defend Fleet against all of the claims alleged in the suit.

or design.' " *Wayne Township*, 650 N.E.2d 1205, 1208 (Ind.App.1995) (quoting *Terre Haute, supra*, 634 N.E.2d at 1338). GAIC argues that because Title VII requires intentional discrimination and because Gastineau alleged only Title VII violations against Fleet, the sexual harassment does not qualify as an occurrence under the policy.

■ Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Although the issue of employer liability for sexual harassment has vexed the Seventh Circuit, *see Jansen v. Packaging Corp. of America*, 123 F.3d 490, 494 (7th Cir.1997) (discussing Seventh Circuit's en banc "inability to forge a majority position with regard to the proper standard for evaluating an employer's liability for sexual harassment by a supervisory employee"), it is clear that the standard for employer liability in cases of hostile-environment sexual harassment by a co-worker is negligence. *Carr v. Allison Gas Turbine Division, Gen'l Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir.1994) ("It would be unrealistic to expect management to be aware of every impropriety committed by every low-level employee. But *if it knows or should have known* that one of its ... employees is being harassed, yet it responds ineffectually, it is culpable. The two questions, harassment of the employee and *negligence* of the employer, are linked ....") (emphasis added); *see also Jansen*, 123 F.3d at 494 (discussing that standard of employer liability for hostile-work environment created by supervisor is negligence—no greater than standard of liability for co-worker created environment). Gastineau's complaint against Fleet expressly alleges that his loan processor, Katrina Johnson "sexually harassed him" and "had the purpose or effect of ... creat[ing] an intimidating, hostile, and offensive working environment." Gastineau Complaint at ¶ 2. Furthermore, Gastineau specifically alleged that his "supervisor, Branch Manager Julie Trimble, and her supervisor, Regional Vice President Dan Negele, knew or should have known of the harassing con-

duct and failed to immediately make significant efforts to stop it." Complaint ¶ 3.

In *Wayne Township*, discussed *supra*, the plaintiff insurance company sought a declaration that an insurance policy issued to the Wayne Township School District did not cover claims arising from allegations that a school principal molested a student. The student asserted negligence claims against the school district, as well as claims against the principal. The Indiana Court of Appeals determined that, although the principal's conduct was intentional and, therefore, did not arise out of an occurrence for purposes of the insurance policy, the school district's conduct was alleged to be negligent and, therefore, qualified as an occurrence under the policy. *Wayne Township*, 650 N.E.2d at 1208–09.

GAIC argues that, unlike the plaintiff-student in *Wayne Township*, Gastineau did not explicitly allege a negligence claim against Fleet. Consequently, it argues, this case should be distinguished from *Wayne Township* and the policy should not be interpreted to include Gastineau's hostile work environment claim.

It is correct that Gastineau did not expressly allege a count of negligence against Fleet in his complaint. However, this is irrelevant when the standard of liability for a hostile work environment claim against an employer is negligence and Gastineau properly alleged negligent behavior on the part of Fleet. Just as in *Wayne Township*, the GAIC policy includes a "Separation of Insureds" provision, thus applying coverage to "each insured against whom claim is made or 'suit' is brought." Policy at 9; *cf. Wayne Township*, 650 N.E.2d at 1209 (analyzing the "claims brought against the school separately from the claims brought against [the principal]."); *see also United States Fidelity & Guar. Co. v. Open Sesame Child Care Ctr.*, 819 F.Supp. 756, 760 (N.D.Ill.1993) (distinguishing between abuser's intentional conduct and employer's alleged negligence and finding an occurrence in light of separation of insured's provision in insurance policy).

GAIC acknowledges that in hostile work environment claims the standard for employer liability is negligence. *See* GAIC Br. in

Support of Motion for Summary Judgment at 10. It argues, however, that Title VII requires intentional discrimination and, therefore, a hostile work environment claim (advanced pursuant to Title VII) cannot be an "accident" or "occurrence," as defined by the insurance policy. In other words, GAIC argues that a hostile work environment claim is a claim of intentional discrimination, notwithstanding that the standard of employer liability is negligence. *Cf. Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868 (6th Cir.1997) (noting tension in standard which "equates negligent ignorance of the existence of harassment with intentional discrimination.").

In *Landgraf v. USI Film Products,* the Supreme Court assumed that a hostile work environment claim is one of intentional discrimination in order to address the issue of whether the 1991 Civil Rights Amendment applied retroactively. 511 U.S. 244, 248–49, 114 S.Ct. 1483, 1488–89, 128 L.Ed.2d 229 (1994). The 1991 Amendments expanded the remedies available only for claims of intentional discrimination, *see* 42 U.S.C. § 1981a, and there have been post-Amendment cases in which damages are awarded for hostile work environment claims. *See, e.g., Morimanno v. Taco Bell,* 979 F.Supp. 791 (N.D.Ind. 1997). However, the Seventh Circuit has never required a showing of intentional discrimination in order to establish a claim of hostile work environment. In fact, in *Daniels v. Essex Group, Inc.,* the Seventh Circuit rejected the Third Circuit's formulation of a multi-factor test for assessing hostile work environment claims, the first factor being "the employees suffered intentional discrimination due to sex." 937 F.2d 1264, 1271 (7th Cir.1991) (discussing *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990)). The Seventh Circuit has opted instead for the test it continues to endorse: a court must examine a plaintiff's claim against both an objective and subjective standard in order to evaluate a hostile work environment claim. *Daniels,* 937 F.2d at 1271; *see also Doe v. City of Belleville,* 119 F.3d 563, 591 (7th Cir.1997); *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1453 (7th Cir.1994). After assessing the objective and subjective standards for determining whether a hostile work environment existed, the court must then consider whether an employer knew or should have known of the environment. *Daniels,* 937 F.2d at 1272 ("Once the court reaches the conclusion that, based upon both the subjective and objective standards, the employee has stated a valid harassment claim, it must conduct one additional inquiry ... [:] 'if the employer knew or should have known about an employee's acts of harassment and fails to take appropriate remedial action.'") (quoting *Brooms v. Regal Tube Co.,* 881 F.2d 412, 420 (7th Cir.1989)); *see also Jansen, supra,* 123 F.3d at 494 (emphasizing negligence standard for employer liability in hostile work environment claims). Other courts also evaluate hostile work environment claims without regard to intent. *See, e.g., Newton v. Department of the Air Force,* 85 F.3d 595, 598 (Fed.Cir.1996) ("The existence of specific discriminatory intent vel non is, in short, not an element of a 'hostile work environment' claim."); *Ellison v. Brady,* 924 F.2d 872, 880 (9th Cir.1991) ("Well-intentioned compliments by co-workers or supervisors can form the basis of a sexual harassment cause of action if a reasonable victim of the same sex as the plaintiff would consider the comments sufficiently severe or pervasive to alter a condition of employment and create an abusive working environment."); *Vaughn v. Pool Offshore Co.,* 683 F.2d 922, 925 n. 3 (5th Cir.1982) (reaffirming principle that "a discriminatory work environment need not result form intentional discrimination in order to violate Title VII."); *Bundy v. Jackson,* 641 F.2d 934, 945 (D.C.Cir.1981) ("Racial or ethnic discrimination against a company's minority clients may reflect no intent to discriminate directly against the company's minority employees, but in poisoning the atmosphere of employment it violates Title VII.").

Although the Seventh Circuit has acknowledged the difficulty in determining whether conduct in the workplace is objectively hostile, rather than merely offensive, it has never recommended recourse to evaluating an alleged harasser's intent. *See, e.g., Baskerville,* 50 F.3d at 430 (discussing difficulty in "drawing the line" that separates actionable harassment from the merely vulgar). In fact, the Seventh Circuit has made clear that,

without regard to intent, of either an alleged harasser or an employer, there exists a "safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of sex." *Galloway v. General Motors,* 78 F.3d 1164, 1168 (7th Cir.1996); *cf. Doe v. City of Belleville, Ill.,* 119 F.3d 563, 578 (7th Cir.1997) ("so long as the environment itself is hostile to the plaintiff because of her sex, why the harassment was perpetrated (sexual interest? Misogyny? Personal vendetta? Misguided humor? Boredom?) is beside the point."). This is not surprising given that Title VII applies only to employers (not to individuals) (*see Williams v. Banning,* 72 F.3d 552 (7th Cir. 1995)), and, as stated, the Seventh Circuit has consistently held that negligence is the appropriate standard for assessing employer liability for hostile work environment claims.

■ In sum, the Seventh Circuit has made clear that, in order for an employer to discriminate against an employee who objectively and subjectively has been the victim of a hostile work environment, it must have known or should have known about the discrimination. *Jansen,* 123 F.3d at 494; *Carr,* 32 F.3d at 1009; *see also Daniels,* 937 F.2d at 1272. If the employer is negligent in this way, it can be found to have discriminated in violation of Title VII. Because the standard for employer liability for hostile work environment claims is negligence, we hold that Gastineau's hostile work environment claim against Fleet qualifies as an occurrence pursuant to its insurance policy. Accordingly, GAIC's motion for summary judgment on the issue of whether a hostile work environment claim against Fleet is an occurrence under the parties' insurance policy must be *denied* and Fleet's motion for partial summary judgment *granted.*[7]

### Conclusion

For these reasons, we find that GAIC had a duty to defend and indemnify Fleet in

Gastineau's suit against it. Gastineau's complaint alleged bodily injury arising out of an occurrence as defined by the policy and there was no co-employee exclusion in effect precluding Gastineau's claims from coverage. Accordingly, GAIC's motion for summary judgment shall be *denied* and Fleet's motion for partial summary judgment shall be *granted.*

---

7. Because we find that Gastineau's claims against Fleet constituted a bodily injury arising out of an occurrence as defined by Fleet's policy, we need not consider Fleet's additional contention that Gastineau alleged personal injury (i.e., an invasion of privacy) within the scope of the policy.