**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-20355

_____

BLEST INVESTMENTS CORP. f/k/a/ LEND LEASE
TRUCKS INC., LEND LEASE DEDICATED SERVICE,
INC., and AIR LIQUIDE AMERICA CORP.,
individually and as successor in interest
to LIQUID AIR CORP.,

Plaintiffs-Appellees,

versus

THE INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-97-CV-3221)

_____

July 1, 1999

Before WIENER, DeMOSS and PARKER, Circuit Judges.

WIENER, Circuit Judge:[*]

In this breach of contract and declaratory judgment action arising out of an insurance coverage dispute, Defendant-Appellant Insurance Company of the State of Pennsylvania ("ICSP") appeals the district court's grant of summary judgment and award of damages and attorneys' fees in favor of Plaintiffs-Appellees Lend Lease and Air Liquide.  Following a de novo review of the record, we reverse in part, vacate in part, and render judgment in favor of ICSP.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**FACTS AND PROCEEDINGS**

Lend Lease[2] is a trucking company engaged in the business of transporting fuels, chemicals, and other products. Air Liquide manufactures liquid gas and contracts with trucking companies like Lend Lease for the delivery of its product to commercial and industrial customers throughout the United States, as well as in other countries. In 1987, Lend Lease and Air Liquide entered into a written "Contract for Hauling" (the "Contract") pursuant to which Lend Lease agreed to use its tractors to transport Air Liquide's liquid oxygen, nitrogen, and argon in cryogenic trailers owned by Air Liquide.[2] In the Contract, Lend Lease agreed to "procure and maintain, at its sole expense, policies of comprehensive general liability and automobile liability insurance" in which Air Liquide would be designated an additional named insured and pursuant to which Air Liquide would be furnished legal defense and shielded from liability for bodily injury, death, and property damage in an amount not less than $7 million.[3]

---

[2]Lend Lease is the predecessor of Blest Investment Corporation, one of the named parties in this litigation.

[2]Under the heading "Recitals," the contract provides in pertinent part:
> WHEREAS, [Air Liquide] desires to avail itself of the trucking services of [Lend Lease] for the transportation of liquid oxygen, nitrogen and argon ("Product") for [Air Liquide], in liquid cryogenic trailers ("Trailers") owned by [Air Liquide] in accordance with the provisions of this Agreement . . . .

[3]On April 1, 1991, the parties amended the Contract to reduce the required policy limits to an amount not less than $5 million

In 1991, Lend Lease purchased a commercial truckers insurance policy (the "Policy") from ICSP in which Lend Lease was designated as the sole named insured. The Policy provides coverage to all insureds, both named and unnamed, for sums paid as damages because of bodily injury or property damage "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" A covered auto, as defined in the Policy, includes "'[t]railers' with a load capacity of 2,000 pounds or less designed primarily for travel on public roads." The Policy defines unnamed insureds as, <u>inter alia</u>, "[t]he owner or anyone else from whom you hire or borrow a covered 'auto' that is a 'trailer' while the 'trailer' is connected to another covered 'auto' that is a power unit." The parties do not dispute that Lend Lease's tractors are "power units" or that both the tractors and Air Liquide's cryogenic trailers are "covered autos" within the meaning of the policy. Neither do the parties dispute that the potential for liability on the part of Air Liquide had been triggered by an occurrence that was an "accident" within the meaning of the policy. Rather, the issue to be resolved in this case is whether, on the basis of the allegations in the complaint of a Lend Lease truck driver's now-dismissed state court lawsuit arising out of that accident, ICSP was obligated to defend Air Liquide in that suit.

In October 1991, Lend Lease's employee, Steve Carter, drove a tractor/trailer rig, consisting of a Lend Lease tractor and an Air Liquide trailer full of liquid nitrogen, to an Illinois storage

_____

per occurrence.

facility on the premises of Air Liquide's customer Commonwealth Edison Company ("Commonwealth") on which an above-ground storage tank owned by Air Liquide was located. On his arrival at the facility, Carter encountered an open ditch on the Commonwealth premises that prevented his parking the rig in an optimum unloading position near Air Liquide's storage tank. As a result of having had to park some distance away, Carter was forced to walk back and forth through the ditch and climb its sides in efforts first to connect the trailer's transfer hoses to the tank and then to monitor the pressure gauges on both the trailer and the tank during the transfer of the liquid nitrogen from the trailer to the storage tank. At some point after Carter began transferring the liquid nitrogen, pressure inside the storage tank became dangerously high and caused liquid nitrogen to be discharged through the tank's safety valve, spraying Carter and causing him to sustain severe cryogenic burns and freezing.

Carter filed suit (the "Carter lawsuit" or "Carter litigation") in Illinois state court in October 1993, naming as defendants both Air Liquide and Commonwealth, among others.[4] In his complaint, Carter sought recovery under theories of strict products liability, negligence, and breach of implied warranty of merchantability.

---

[4]As Carter's injuries were caused by an accident arising during the course and scope of his employment, he received benefits through Lend Lease's workers' compensation coverage. Workers' compensation is Carter's exclusive remedy against his employer, explaining why Lend Lease was not a defendant in the Carter litigation.

On being named a defendant in the Carter lawsuit, Air Liquide made two separate demands on ICSP for defense and coverage, both of which were denied. Thereafter, Lend Lease communicated a similar demand to ICSP on behalf of Air Liquide. After this third demand also proved fruitless, Air Liquide filed a third-party complaint against Lend Lease in the Carter litigation alleging, among other things, that Lend Lease breached its contractual obligation by failing to have Air Liquide included as a named insured in the Policy.[5] In July 1996, the state court granted partial summary judgment in favor of Air Liquide on this claim, concluding that Lend Lease had breached the Contract with regard to insurance but that Air Liquide had not yet proved damages.

Thereafter, in September 1997, Air Liquide and Lend Lease filed this action against ICSP in federal district court in Texas, alleging breach of contract and seeking (1) declaratory judgment on the issue of insurance defense and coverage; (2) damages in the form of attorneys' fees and costs incurred by Air Liquide as a result of ICSP's refusal to defend it in the Carter litigation; and (3) attorneys' fees and costs incurred by both plaintiffs in the instant case.

In March 1998, on the parties' cross motions, the district court granted summary judgment in favor of Lend Lease and Air Liquide, ruling without written reasons that (1) ICSP owes a duty

---

[5]In October 1991, Air Liquide had received a certificate of insurance indicating that, in the Policy, Lend Lease had designated itself as the <u>sole</u> named insured, with general and automobile liability coverage in the amount of <u>$1 million</u> per occurrence.

to defend Air Liquide in the Carter lawsuit and, in the event Carter proves that his injuries resulted from the use of Air Liquide's trailer, a duty to indemnify Air Liquide for damages paid in satisfaction of its obligation;[6] (2) Air Liquide is entitled to $358,000 in damages for ICSP's breach of its duty to defend in the Carter lawsuit as well as $51,000 for fees, costs, and expenses incurred in the instant case; and (3) Lend Lease is entitled to $145,000 for fees, costs, and expenses incurred in the instant case. ICSP now appeals, seeking reversal.

## II

### ANALYSIS

#### A. Standard of Review

We review a grant of summary judgment <u>de novo</u>, applying the same standard as the district court.[7] Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and shows that the moving party is entitled to judgment as a matter

---

[6]In October 1998, approximately seven months after the district court granted summary judgment in the instant case, Carter voluntarily dismissed his state court lawsuit on the eve of trial. As ICSP's duty to indemnify rests solely on Carter's ability to prove at trial that his injuries resulted from the use of Air Liquide's trailer, the dismissal of Carter's suit rendered moot this portion of the district court's judgment. Whether ICSP's duty to indemnify may ultimately be triggered by the assessment of liability against Air Liquide in another lawsuit is of no consequence to this appeal. Hence, we review only the portions of the district court's ruling imposing on ICSP a duty to defend and awarding damages and attorneys' fees for a breach of this duty.

[7]<u>Melton v. Teacher's Ins. & Annuity Ass'n of America</u>, 114 F.3d 557, 559 (5th Cir. 1997).

6

of law.[8]

## B.    ICSP's Duty to Defend Air Liquide

As Carter is a citizen of Indiana, the parties agree that Indiana law is the appropriate law to apply in determining whether ICSP owes Air Liquide a duty to defend it in the Carter litigation. Under Indiana law, an insurer's duty to defend is determined solely by reference to (1) the language of the insurance policy and (2) the allegations in the plaintiff's complaint.[9]  This is frequently referred to, at least in other jurisdictions, as the "eight corners test."[10]   Although not unconditional, the duty to defend is expansive.[11]   Indeed, a duty to defend arises whenever a plaintiff makes allegations that, if proved true, would trigger an insurer's obligation to pay under its policy.[12]

Ordinarily, in determining whether ICSP has a duty to defend Air Liquide, we would first try to ascertain whether Air Liquide is

---

[8]River Prod. Co., Inc. v. Baker Hughes Prod. Tools, Inc., 98 F.3d 857, 859 (5th Cir. 1996).

[9]Federal Ins. Co. v. Stroh Brewing Co., 127 F.3d 563, 565 (7th Cir. 1997)(stating that "[w]hile Indiana's courts may use differing language to describe the standard, we believe there is essentially only one standard —— that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach."); General Accident Ins. Co. of Am. v. Gastineau, 990 F.Supp. 631, 634 (S.D. Ind. 1998).

[10]See Travelers Indem. Co. v. Holloway, 17 F.3d 113, 115 (5th Cir. 1994).

[11]Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co., 665 N.E.2d 891, 892 (Ind. 1996)(noting that the duty to defend is considerably broader than the duty to indemnify).

[12]Stroh Brewing Co., 127 F.3d at 565.

an insured under the Policy — because Air Liquide is not a named insured, an inquiry turning on whether Lend Lease either "hired" or "borrowed" Air Liquide's trailer — before considering whether the Policy provides coverage for the particular claims alleged. As our examination of the Policy in pari materia with the allegations in Carter's complaint leads us to the ultimate conclusion that the claims he asserted against Air Liquide are not covered under the Policy, however, we assume arguendo that Air Liquide is an unnamed insured by virtue of its ownership of a borrowed or hired "covered auto" and proceed directly to an analysis of the scope of coverage provided by the Policy.

As previously noted, ICSP issued a policy to Lend Lease in which it agreed to "pay all sums an 'insured' must pay as damages because of 'bodily injury' or 'property damage' . . . caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."[13]  Assuming, as we are, that Air Liquide is an insured under this policy, ICSP's duty to defend turns on whether Carter has alleged injury "resulting from the ownership, maintenance or use" of Air Liquide's trailer.[14]

Carter's complaint comprises four counts, three of which are

_____

[13]Emphasis added.

[14]In addition, ICSP argues that its policy contains exclusions that explicitly eschew coverage of Carter's claims and that Air Liquide is estopped — either judicially or collaterally, or both — from asserting that ICSP owes it a duty to defend. As ICSP's duty to defend can adequately be determined without considering these arguments, we forego any discussion of them.

8

relevant to this case.[15]  In those three he seeks relief under theories of strict liability, negligence, and breach of warranty for injuries sustained "due to a discharge of . . . liquid nitrogen from [Air Liquide's] on-site storage tank."[16]  Even though Carter's claims focus exclusively on the condition of Commonwealth's storage facility premises and Air Liquide's on-site storage tank, and not at all on Air Liquide's cryogenic trailer, Appellees nevertheless insist that ICSP is obligated to defend Air Liquide based on the factual allegation in Carter's complaint that he was injured <u>while unloading</u> liquid nitrogen <u>from the trailer</u>.[17]  Appellees suggest that, to trigger a duty of ICSP to defend Air Liquide, Carter's complaint need not have contained allegations of a <u>causal</u> connection between his act of unloading the liquid gas from the trailer and the injuries he incurred when the storage tank

---

[15]In a fourth count, Carter's wife seeks damages for loss of consortium and services.

[16]Two weeks after the voluntary dismissal of his first lawsuit, Carter initiated suit once again by filing another complaint in state court.  This complaint — the November complaint — is a virtual replica of the original except for the addition of at least nine references to Air Liquide's cryogenic <u>trailer</u> and the assertion that Carter's injuries arose from the use of that trailer.  In a motion carried with the case, Appellees now ask us to take judicial notice of Carter's November complaint.  As the issues before this court arise from ICSP's refusal to defend Air Liquide in Carter's original lawsuit, however, we fail to see how our analysis would be aided by consideration of the November complaint.  Appellees' motion is, therefore, denied.  All references in this opinion are to Carter's original complaint.

[17]In his complaint, Carter alleges that he "was delivering liquid nitrogen . . . by unloading [it] from the tanker truck into a stationary tank . . . when he suffered severe burns, cryogenic freezing and other injuries" and that, at all times pertinent to his claim, he was "performing the delivery, transfer and storage of the liquid nitrogen."

9

overflowed, so long as a _temporal_ connection is evidenced by discrete facts alleged in his complaint.

In support of this proposition, Appellees cite the Indiana Supreme Court's decision in <u>Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.</u>.[18] In that case, a deliveryman was injured when stairs in a customer's home collapsed under him while he was carrying a water softener from his truck to the basement of that home.[19] After settling the deliveryman's claim, the customer's homeowners' liability insurer brought a subrogation action against the insurer of the deliveryman's truck. Although the automobile liability policy defined the term "insured" as including "any person while <u>using</u> an owned automobile" and defined the term "use" as including the "loading and unloading" of that automobile, the court nevertheless determined that there was no coverage under the policy because the deliveryman's injuries did not "arise out of the 'use' of the truck."[20] In reaching its decision, the court held that an accident or injury "arises out of" the use of a motor vehicle only when such use is the "efficient and predominating cause" of the

---

[18]291 N.E.2d 897 (Ind. 1973).

[19]<u>Id.</u> at 898.

[20]<u>Id.</u> at 899. Unlike the instant case, in <u>Lumbermens</u>, the homeowners' liability insurer argued that the deliveryman's <u>customers</u> — rather than the deliveryman himself — were "users" of the deliveryman's truck (by virtue of cooperating with the driver in the loading and unloading process), and were, therefore, also insured under the automobile liability policy. <u>Id.</u> at 898. As the court ultimately rejected coverage based not on a determination regarding the customers' <u>status</u> under the policy but rather on a determination that the deliveryman's use of the truck did not <u>cause</u> his injuries, this distinction does not alter the relevance of <u>Lumbermens</u> to the case at bar.

10

accident or injury.[21]

Contrary to the purpose for which Appellees cite the case, we read Lumbermens as standing for the proposition that, under Indiana law, the phrase "arising out of" is synonymous with the phrase "caused by" in the context of insurance coverage.[22] Within the four corners of Carter's complaint, then, the cryogenic trailer is the analog of the delivery truck in Lumbermens and the defective premises and storage tank are the analogs of the customer's stairs.

We are cognizant that, in the instant case, ICSP's policy employs the phrase "resulting from" rather than "arising out of." Nevertheless, we observe that, linguistically, the phrase "resulting from" connotes an even tighter causal nexus between a plaintiff's injuries and his ownership, maintenance, or use of a vehicle than does the phrase "arising out of." Appellees have cited no Indiana case — and we have found none in our independent research — that militates in favor of adopting a broader construction of the phrase.[23] Consequently, we conclude that the Policy provides coverage only for bodily injury and property damage

---

[21]Id.

[22]See Shelter Mut. Ins. Co. v. Barron, 615 N.E.2d 503, 506 (Ind. Ct. App. 5th Dist. 1993)(noting that, in Indiana, "a more narrow construction has been given to the phrase 'arising out of the ownership, maintenance or use' of a vehicle"); State Farm Mut. Auto Ins. Co. v. Spotten, 610 N.E.2d 299, 301-02 (Ind. Ct. App. 3d Dist. 1993).

[23]Cf. State Farm Mut. Auto. Ins. Co. v. Barton, 509 N.E.2d 244, 246 (Ind. Ct. App. 2d Dist. 1987)(implying, although not explicitly stating, that, to trigger a duty to defend under a policy that employs the phrase "resulting from," plaintiff's complaint must allege a causal connection between use of a covered vehicle and his injuries).

caused by the ownership, maintenance or use of a covered auto.

As noted, Appellees contend that Carter's allegation that he was unloading Air Liquide's trailer at the time of the accident is an allegation of "use" of that covered auto. Nowhere in his complaint, however, does Carter allege a causal connection —— or facts that fairly imply such a nexus —— between this use and his injuries. To the contrary, Carter alleges that his injuries resulted solely from, i.e., were solely caused by, defects in the storage facility premises and the on-site storage tank. As ICSP is not obligated under the Policy to pay damages for injuries caused by those objects, it is not obligated to defend Air Liquide against Carter's damage claims for those injuries.

## III

### CONCLUSION

We deny Appellees' motion to take judicial notice of other proceedings; in conducting a de novo review of a district court's grant of summary judgment, we will consider only such pleadings and evidence as were before that court at the time of its ruling. Based on our plenary review of the summary judgment record, and for the aforementioned reasons, we reverse the district court's summary judgment in favor of Lend Lease and Air Liquide, vacate the court's award of damages and fees, and grant a take-nothing judgment in favor of ICSP.

**REVERSED in part, VACATED in part, and RENDERED.**

12