**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 11 2014, 9:56 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEIDRE L. MONROE**
Lake Superior Court, Juvenile Division
Public Defender's Office
Gary, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES:

**GREGORY F. ZOELLER**
Attorney General of Indiana
Indianapolis, Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
LAKE COUNTY COURT APPOINTED
SPECIAL ADVOCATE:

**DONALD W. WRUCK, III**
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of A.R. and K.R., Minor Children, and B.W., Mother, | ) ) ) ) |
| B.W., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | )   No. 45A05-1307-JT-335 |
| | ) |

INDIANA DEPARTMENT OF CHILD SERVICES and )
LAKE COUNTY COURT APPOINTED SPECIAL )
ADVOCATE,[1] )
                                              )
     Appellees-Petitioners. )

---

**APPEAL FROM THE LAKE SUPERIOR COURT**
The Honorable Thomas W. Webber, Sr., Judge Pro Tempore
Cause No. 45D06-1207-JT-126 and -127

---

**June 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

B.W. ("Mother") appeals the juvenile court's order terminating her parental rights

to A.R. and K.R. ("the Children") arguing that the evidence presented was insufficient to

support the termination of her parental rights.

We affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

On December 4, 2010, the Children were removed from Mother and Father[3] and

placed in the care of Illinois Department of Child Services because both Mother and Father

---

[1] Lake County Court Appointed Special Advocate has not filed an appellate brief, but did file an appearance with this court. Additionally, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal. *Knight v. Indiana Ins. Co.* 871 N.E.2d 357, 363 (Ind. Ct. App. 2007).

[2] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order For the Indiana Court Reporting Pilot Project By Using Professional Transcription Experts On Appeal[,]" issued on November 8, 2012, and effective on November 1, 2012. *See In re Pilot Project For Expedited Transcripts In the Preparation of the Record and Briefing on Appeal*, 977 N.E.2d 1010 (Ind. 2012). We are grateful for the ongoing cooperation of the Honorable Thomas W. Webber, Sr. of Lake Superior Court, AVTRANZ, appellate counsel, and the Office of the Indiana Attorney General in the execution of this pilot project.

[3] The Children's Father voluntarily relinquished his parental rights and does not participate in this appeal. We will recite facts pertinent to Mother's appeal.

had been arrested in Illinois. Illinois Department of Child Services contacted Lake County Department of Child Services ("DCS") on December 6, 2010, when it was determined that the Children were residents of Indiana. A DCS case manager went to Illinois to pick up the Children and learned that law enforcement agencies in Indiana and Illinois were investigating Mother and Father for a murder that occurred in South Bend, Indiana. DCS took custody of the Children and placed them in foster care in Indiana.

On December 7, 2010, DCS filed a petition alleging that the Children were children in need of services ("CHINS"), and an initial hearing was held, at which the juvenile court found that it was in the Children's best interest to remain outside of Mother's care and authorized the Children's placement in foster care. On January 11, 2011, the juvenile court conducted a factfinding hearing on the CHINS petition and adjudicated the Children as CHINS. In March 2011, the Children were placed with their paternal grandmother ("Grandmother"). At a permanency hearing held on November 9, 2011, the juvenile court approved a permanency plan of termination of parental rights and adoption by Grandmother.

On July 6, 2012, DCS filed petitions to terminate Mother's parental rights to the Children. On June 11, 2013, the juvenile court conducted an evidentiary hearing on the termination petitions. Mother appeared telephonically and by counsel because she was incarcerated.

The evidence presented at the hearing showed that Mother had remained incarcerated since her arrest on December 4, 2010. DCS family case manager Christina Olejnik ("FCM Olejnik") testified that her knowledge of Mother's criminal activities was

3

that Mother was in South Bend and was involved in an altercation with a man. *Tr*. at 67. Mother telephoned Father, who had driven down to South Bend from East Chicago and shot and killed the man. *Id*. Both Mother and Father were charged as a result of this crime, and Mother was convicted of murder and conspiracy to commit murder. *Id*. at 67, 68; *State's Ex*. R. She was sentenced to an aggregate term of fifty years imprisonment with forty-five years executed. *State's Ex*. R. Her earliest possible release date is June 13, 2033. *State's Ex*. U. Before Mother's conviction, a DCS family case manager met with Mother and explained to her what she was required to complete pursuant to the court's orders, including obtaining stable housing and employment and participating in therapy, parenting classes, and supervised visits. *Tr*. at 65-66. DCS did not provide any of these services, and Mother did not participate in any of the services, due to her incarceration.

When DCS removed the Children in 2010, K.R. was two years old and A.R. was one year old. At the time of the termination hearing, the Children were four and five years old, respectively, and had been out of Mother's care for two-and-a-half years. FCM Olejnik recommended termination of Mother's parental rights because the Children needed permanency and due to Mother's incarceration. *Id*. at 66. FCM Olejnik testified that the Children were doing well in the care of Grandmother and that DCS's plan was for her to adopt the Children. *Id*. at 66.

At the conclusion of the termination hearing, the juvenile court took the matter under advisement. On June 12, 2013, the juvenile court issued its order terminating Mother's parental rights to the Children. Mother now appeals.

## DISCUSSION AND DECISION

We begin our review by acknowledging that this court has long had a highly deferential standard of review in cases concerning the termination of parental rights. *In re B.J.*, 879 N.E.2d 7, 14 (Ind. Ct. App. 2008), *trans. denied*. When reviewing a termination of parental rights case, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *In re B.J.*, 879 N.E.2d at 14.

Here, in terminating Mother's parental rights to the Children, the juvenile court entered specific findings and conclusions. When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied.*

The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution. *In re C.G.*, 954

5

N.E.2d 910, 923 (Ind. 2011). These parental interests, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *In re J.C.*, 994 N.E.2d 278, 283 (Ind. Ct. App. 2013). In addition, although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.*

Before an involuntary termination of parental rights may occur, the State is required to allege and prove, among other things:

    (B)    that one (1) of the following is true:

        (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

        (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

        (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

    (C)    that termination is in the best interests of the child; and

    (D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State's burden of proof for establishing these allegations in termination cases "is one of 'clear and convincing evidence.'" *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). Moreover, if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court *shall* terminate the parent-child relationship. Ind. Code § 31-35-2-8(a) (emphasis added).

Mother argues that DCS failed to prove the required elements for termination by sufficient evidence. She concedes that the Children were removed from her care for the requisite time period and that there was a satisfactory plan for the Children's care and treatment. Instead, Mother alleges that DCS failed to present sufficient evidence to prove that the conditions which resulted in the Children being removed will not be remedied or that the continuation of the parent-child relationship poses a threat to the Children. She also asserts that insufficient evidence was presented to prove that it was in the best interest of the Children that her parental rights be terminated.

Initially, we note that Mother does not specifically challenge the juvenile court's findings and conclusions. Therefore, to the extent that she argues that the juvenile court's findings or conclusions are clearly erroneous, Mother has waived this issue by failing to make a cogent argument. *In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (citing Ind. Appellate Rule 46(A)(8)(a)), *trans. denied*. Additionally, Mother's arguments consist of statements without citation to either legal authority or citation to the record. A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record. *Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) (citing *York v. Fredrick,* 947 N.E.2d 969, 979 (Ind. Ct. App. 2011), *trans. denied*). Consequently, Mother has waived her claims. Waiver notwithstanding, we will address Mother's arguments.

Mother's first contention is that DCS did not prove by clear and convincing evidence that the conditions that resulted in the Children's removal would not be remedied. When a juvenile court decides the issue whether the conditions that led to a child's removal

7

would be remedied, the juvenile court must assess a parent's fitness to care for his or her child at the time of the termination hearing. *In re D.D.*, 804 N.E.2d at 266. Parental rights may be terminated when parties are unwilling or unable to meet their parental responsibilities. *Id.* at 265.

The evidence showed that the Children were removed from Mother's care on December 4, 2010. Mother has remained incarcerated ever since and was given a forty-five-year sentence for her conviction for murder. Her earliest release date is June 13, 2033. The juvenile court concluded that Mother was not in a position to parent the Children. This conclusion was supported by the evidence as it will be impossible for Mother to parent her children before they become adults because of her criminal sentence. K.R. and A.R. will be twenty-five years old and twenty-four years old respectively when Mother is released from incarceration.

Mother asserts that the juvenile court erred because it found that she had not completed any services, but failed to recognize that Mother was incarcerated during the duration of the case and was not offered services. The provision of family services is not a requisite element of the termination of parental rights statute, and even a complete failure to provide services does not serve to negate a necessary element of the termination statute and require reversal. *In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000). *See also In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000) ("[T]he law concerning termination of parental rights does not require the DFC to offer services to the parent to correct the deficiencies in childcare."). The juvenile court did not err in concluding that there was a

8

reasonable probability that the conditions that resulted in the removal of the Children from Mother's care would not be remedied.

Mother next contends that DCS failed to prove by clear and convincing evidence that there was a reasonable probability that the continuation of the parent-child relationship posed a threat to the well-being of the Children. At the outset, we observe that Indiana Code section 31-35-2-4(b)(2)(B) is written such that, to properly effectuate the termination of parental rights, the juvenile court need only find that one of the three requirements of subsection (b)(2)(B) has been established by clear and convincing evidence. *A.D.S.*, 987 N.E.2d at 1156. Therefore, as we have already determined that sufficient evidence supported the conclusion that the conditions that resulted in the removal of the Children from Mother's care would not be remedied, we need not address Mother's argument on this element.

Mother's final argument is that insufficient evidence was presented to prove that termination was in the best interest of the Children. In determining what is in the best interests of the child, the trial court is required to look at the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) (citing *In re D.D.,* 804 N.E.2d at 267), *trans. dismissed.* In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *Id.* (citing *In re R.S.,* 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied).* The trial court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.* Additionally,

9

a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests. *Id.* (citing *McBride v. Monroe Cnty. Office of Family & Children,* 798 N.E.2d 185, 203 (Ind. Ct. App. 2003)).

The record is clear that the Children needed stability and a sense of permanency in order to foster their physical, mental, and social growth. K.R. and A.R. were two years old and one year old, respectively, at the time they were removed from Mother's care due to her arrest on suspicion of murder. At the time of the termination hearing, the Children were four years old and five years old and had been out of Mother's care for two-and-a-half years. Due to Mother's conviction and sentence for murder, her earliest release date from incarceration is June 13, 2033, at which time, the Children will both be adults. FCM Olejnik recommended termination because of the Children's need for permanency, the length of Mother's criminal sentence, and how long DCS had been involved in the Children's lives. *Tr.* at 66.

Mother asserts that the Children should be afforded the opportunity to be raised or at least have a relationship with their natural mother. However, by her participation in criminal activities, she has deprived the Children of her presence in their lives. "[T]his court has recognized that '[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children.'" *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006) (quoting *In re A.C.B.,* 598 N.E.2d 570, 572 (Ind. Ct. App. 1992)), *trans. denied.*

We conclude that sufficient evidence was presented to support that termination was in the best interest of the Children.

We will reverse a termination of parental rights "only upon a showing of 'clear error'--that which leaves us with a definite and firm conviction that a mistake has been made." *In re A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997) (quoting *In re Egly*, 592 N.E.2d 1232, 1235 (Ind. 1992)). Based on the record before us, we cannot say that the juvenile court's termination of Mother's parental rights to the Children was clearly erroneous. We therefore affirm the juvenile court's judgment.

Affirmed.

MAY, J., and BRADFORD, J., concur.