G. Ray TRISLER, Appellant–Defendant,

v.

INDIANA INSURANCE COMPANY, Appellee–Plaintiff.

No. 41A01–9102–CV–56.

Court of Appeals of Indiana, First District.

July 31, 1991.

Robert P. Thomas, Thomas Law Office, Indianapolis, for appellant-defendant.

James L. Whitlatch, Bunger, Robertson, Kelley & Steger, Bloomington, for appellee-plaintiff.

ROBERTSON, Judge.

G. Ray Trisler appeals the entry of summary judgment in favor of Indiana Insurance Company in the insurance company's suit for declaratory judgment.

We reverse.

By its declaratory judgment action, the insurance company sought a declaration that it did not owe insurance coverage under policies of insurance issued to Trisler and/or Trisler d/b/a Spirit of '76 Inn. The question of coverage arose out of two claims filed against Trisler in separate suits, both having been subsequently resolved by summary judgment or dismissal in favor of Trisler. The insurance company's position is simply that under the very clear language of the policies, coverage is not provided for the kinds of claims alleged against Trisler. The insurance company maintains that the only claim raised in the

first lawsuit, *Executive Builders, Inc. v. G. Raymond Trisler,* Cause No. 73C01–8803–CP–057, was one for tortious interference with contract or business relation. Since this first claim is based upon intentional conduct allegedly committed by Trisler, coverage is not provided. Similarly, the insurance company argues that the allegations made in the counterclaim brought against Trisler under cause no. 73C01–8804–CP–113 do not disclose an occurrence within the meaning of the policy.

In Indiana, the duty to defend is broader than coverage liability. *Cincinnati Ins. Co. v. Mallon* (1980), Ind.App., 409 N.E.2d 1100, 1105. It is the nature of the claim, not its merit, which establishes the insurer's duty to defend. Consequently, if it is determined that an insurer has a contractual duty to defend a suit based upon risks it has insured, the insurer will not be relieved of that obligation, regardless of the merits of the claim. *Id.*

The insurer's duty to defend is determined from the allegations of the complaint coupled with those facts known to or ascertainable by the insurer after reasonable investigation. *See American States Ins. Co. v. Aetna Life & Casualty Co.* (1978), 177 Ind.App. 299, 379 N.E.2d 510, 517; *United States Fidelity & Guaranty Co. v. Baugh* (1970), 146 Ind.App. 583, 600, 257 N.E.2d 699, 710, *trans. denied.* Accordingly, in evaluating the factual basis of a claim and the insurer's concomitant duty to defend, this court may properly consider the evidentiary materials offered by the parties to show coverage or exclusion. *See Allstate Ins. Co v. Herman* (1990), Ind., 551 N.E.2d 844. If the pleadings fail to disclose a claim within the coverage limits or one clearly excluded under the policy, and investigation also reveals the claim is outside the coverage of the policy, no defense will be required. *Heshelman v. Nationwide Mutual Fire Ins. Co.* (1980), Ind.App., 412 N.E.2d 301, 302.

Construction of a written contract is a question of law for which summary judgment is appropriate where the terms of the contract are unambiguous and there is no genuine issue of material fact. *B & R*

*Farm Services, Inc. v. Farm Bureau Mutual Ins. Co.* (1985), Ind., 483 N.E.2d 1076, 1077. An unambiguous policy must be enforced according to its terms, even those which limit the insurer's liability. *American States Ins. Co. v. Aetna Life & Casualty Co.*, 379 N.E.2d at 516. This court may not extend coverage delineated by the policy nor may it rewrite the clear and unambiguous language of the policy; but, an exclusionary clause in a policy will not be read so loosely as to effectively exclude all coverage. *Id.*

Trisler's comprehensive personal liability endorsement policy contains the following provisions concerning coverage:

COVERAGE: The company will pay on behalf of the **insured** the **ultimate net loss** which the **insured** shall become legally obligated to pay, in excess of the **applicable** (retained) limit, because of **personal injury** or **property damage** caused by or arising out of an occurrence during the endorsement period; provided that:

EXCLUSIONS—This insurance does not apply: ...

(b) to any act committed by or at the direction of the **insured** with intent to cause **personal injury** or **property damage,** ...

OCCURRENCE means an accident, including continuous or repeated exposure to conditions, which results in **personal injury** or **property damage,** neither expected nor intended from the standpoint of the **insured.**

PERSONAL INJURY means Bodily injury, shock, mental anguish, sickness or disease, including death resulting therefrom; injury arising out of the false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction, humiliation, libel, slander, defamation of character or invasion of privacy.

Hence, the policy covers Trisler's liability only for personal injury caused by or arising out of an occurrence as defined by the policy, i.e. "an accident ... which results in personal injury ... neither expected nor

intended from the standpoint of the insured," and excludes coverage for acts committed by Trisler "with intent to cause personal injury."

■ The phrases "neither expected nor intended from the standpoint of the insured" and "with intent to cause" personal injury have both been interpreted by Indiana courts. "Intended" and "expected" are not synonyms, but apply to situations in which differing degrees of proof are required. *Auto–Owners (Mutual) Ins. Co. v. Stroud* (1991), Ind.App., 565 N.E.2d 1093, 1095. Indiana common law has rejected the interpretation of intent urged by the insurance company in the present case, that the intent *qua* the act is drawn from the standard applied to the liability of the insured party to the third party for his actions, in favor of a standard requiring greater factual specificity. *But cf. City of Muncie v. United National Insurance Co.* (1991), Ind.App., 564 N.E.2d 979, citing with approval, *Town of South Whitley v. Cincinnati Ins. Co.* (N.D.Ind., 1989), 724 F.Supp. 599, *affirmed*, 921 F.2d 104 (7th Cir.1990). The intent aspect of the phrases utilized in this case contemplate the "volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs." *Herman*, 551 N.E.2d at 845; *Snodgrass v. Baize* (1980), Ind. App., 409 N.E.2d 645, *on rehearing; Home Ins. Co. v. Neilsen* (1975), 165 Ind.App. 445, 332 N.E.2d 240. It is met either by showing an actual intent to injure, or by showing the nature and character of the act to be such that an intent to cause harm to the other party must be inferred as a matter of law. *Id.* 332 N.E.2d at 244.

■ "Expected" injury means injury that occurred when the insured acted even though he was consciously aware that harm was practically certain to occur from his actions. *Stroud*, 565 N.E.2d at 1096; *Indiana Farmers Mutual Ins. Co. v. Graham* (1989), Ind.App., 537 N.E.2d 510, 512,

*trans. denied.* However, the definition of "expected" does not exclude harm that the insured "should have anticipated," *id.*, i.e. objective proof of negligence. *See Bolin v. State Farm Fire & Casualty Co.* (1990), Ind.App., 557 N.E.2d 1084, 1085, 1088, *trans. denied.* Consciousness of the likelihood of certain results occurring is determined by examination of the subjective mental state of the insured. *Id.*

■ As the party moving for summary judgment, the insurance company bears the burden of proving that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *Muncie*, 564 N.E.2d at 981. Until it makes the required showing, Trisler has no obligation to set forth the specific facts which demonstrate the existence of a genuine issue of material fact. *Id.*

The insurance company relies solely upon the complaint and judgment in cause no. 057, the action brought by Executive Builders against Trisler, in support of its assertion that coverage does not extend to the claim for tortious interference with contract or prospective business relation.[1] Paragraph 20 of count I of the complaint contains the allegation that Trisler "engaged in a course of conduct calculated to interfere, disrupt, impede, thwart, create obstacles, delay and inflict financial harm . . ." and then cites the specific "acts complained of." Paragraph 30 of count I is much like paragraph 20. It alleges Trisler, among other things, falsely told potential purchasers of Cielo Vista condominiums that Executive Builders was not paying its share of the regular assessments and was not being fair with the homeowners; that Executive Builders and its officers were concealing the truth, were dishonest, and could not be trusted; that Executive Builders and its officers were devious; "all of which was false and known by Trisler to be false, and all of which was intended to disparage and did disparage" sales of condominiums. Count II reiterates the allega-

---

1. The complaint in cause no. 057 alleges only facts, not legal theories, and hence, arguably raises claims of defamation, tortious infliction of emotional distress, and battery, in addition to the tortious interference with contract or prospective business relation claim identified by the insurance company.

tions of count I and then alleges that the acts of Trisler "recounted were maliciously and intentionally done with the willful intent to injure and damage Executive Builders ..." Accepting these allegations to be true for purposes of summary judgment, we must agree with the insurance company that these pleadings reasonably contemplate only volitional acts accomplished with an intent to injure and do not bring the action within the coverage of the policy.

However, as we indicated earlier, the insurer's duty to defend is not coextensive with liability. The insurer must undertake a reasonable investigation to determine whether a factual basis exists which would bring the claim within the coverage of the policy. Trisler has offered affidavits from the potential purchasers establishing that they have never met nor communicated with him and were not influenced by his actions. Trisler himself denied ever speaking or communicating with any potential purchasers in an attempt to discourage them from purchasing. And, the trial court, in ruling upon Trisler's motion for summary judgment in cause no. 057, found no evidence to substantiate Executive Builders' claim that Trisler made any written representations, deterred potential purchasers, knew of Executive Builders' contracts or prospective business relationships, in any way delayed construction, or took any actions which were wrongful or illegal. Hence, the prior proceedings disclose no evidence, other than the allegations of the complaint, that Trisler committed the alleged acts or that he acted with any intent to injure Executive Builders. This absence of evidence in support of the allegations of the complaint suggests no factual dispute as to Trisler's state of mind; he did not commit the acts alleged and when he did act, he did so in furtherance of his own interests and without any intent or conscious awareness that his actions would harm anyone.

We also must take note of the affidavits of the Montgomerys, who were officers of Executive Builders, in which they each averred that Trisler "by innuendo implied" that they were dishonest. If one basis of the Montgomerys' assertions of intentional defamation is their contention that Trisler by innuendo implied they were dishonest, or his statements concerning their veracity were the basis of their assertion that he interfered with their contractual relations by making slanderous statements which discouraged potential purchasers, the nature of the purported act itself, an innuendo, is so equivocal or veiled as to raise a legitimate factual question as to whether Trisler made the purported statement with the intent to cause personal injury or with conscious awareness that harm was practically certain to follow from his actions. Consequently, summary judgment in favor of the insurance company was improperly granted, at least as it relates to the insurance company's duty to defend Trisler in cause no. 057.

In the action brought by Trisler, the defendants counterclaim that they were damaged and suffered mental anguish by Trisler's violation of various Indiana statutes, covenants and by-laws of the homeowners association and false representations made on forms filed with the Secretary of State. Nowhere in the complaint do the defendants allege that Trisler violated the statutes or covenants and by-laws or made the false filings with the intent to cause them harm or with the conscious awareness that harm was practically certain to result. Neither has the insurance company offered any evidence from which one could attribute any level of intent or state of mind to Trisler. As we noted, the movant bears the burden of demonstrating the nonexistence of any genuine factual dispute and entitlement to summary judgment as a matter of law. The insurance company having failed to meet this burden, we must conclude that the trial court erred in its determination that Indiana Insurance Company had no duty to defend against the counterclaim. Accordingly, the summary judgment in favor of Indiana Insurance Company should be reversed.

The trial court's decision in cause no. 057 does not speak to the question of whether Trisler made the allegedly defamatory statements about Executive Builders attrib-

uted to him in the complaint. The Montgomerys' affidavits indicate only that the slanderous statement they were dishonest was made by innuendo. There is no evidence in the record which would permit us to infer that the other allegedly defamatory remarks were made without an intent to cause harm or a conscious awareness that they were practically certain to result in harm. Accordingly, an entry of summary judgment in favor of Trisler would be inappropriate as well.

Judgment reversed.

BAKER, J., concurs.

SHIELDS, J., concurs in result.