Robert M. KNIGHT, Appellant–
Plaintiff,

v.

INDIANA INSURANCE COMPANY,
Appellee–Defendant,

and

Indiana University, Defendant.[1]

No. 49A05–0608–CV–416.

Court of Appeals of Indiana.

Aug. 8, 2007.

1. Indiana University has not filed a brief as appellant or appellee. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

James H. Voyles, Voyles, Zahn, Paul, Hogan & Merriman, Indianapolis, IN, Attorneys for Appellant.

Joseph M. Dietz, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorney for Appellee.

Russell E. Yates, Yates Law Firm, LLC, Denver, CO, Pro Hac Vice.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Robert M. Knight ("Knight") appeals a summary judgment order in favor of Appellee–Defendant Indiana Insurance Company ("the Insurer") on Knight's breach of contract, bad faith, negligence and punitive damages claims. We affirm.

### Issue

Knight raises three issues, which we consolidate and restate as the following issue: whether the trial court erred by granting summary judgment to the Insurer upon Knight's claims that the Insurer wrongfully denied homeowners policy coverage and breached its duty to investigate and defend a lawsuit arising from Knight's workplace assault and battery of a co-worker that produced no bodily injury.

### Facts and Procedural History

During December of 1999, Knight was employed as head Basketball Coach at Indiana University, and Ronald Felling ("Felling") was employed as an assistant Basketball Coach. In his office at Indiana University, Knight overheard a telephone conversation during which Felling criticized Knight's coaching abilities and called him a derogatory name. Knight interjected himself into the conversation and advised Felling to find another job.

Thereafter, Knight verbally confronted Felling in an office in Assembly Hall at Indiana University, with other assistant coaches present. As Felling moved to leave the room, Knight jumped up and made physical contact with Felling in a manner that Knight described in his deposition as a "bump."[2] (App. 122.) Felling

2. Subsequently, in answering the Insurer's Request for Admissions, Knight admitted that

was pushed backward into a television set.[3] The contact resulted in Felling filing a lawsuit in the United States Southern District Court of Indiana on April 26, 2001. The lawsuit alleged that Knight's conduct against Felling violated 42 U.S.C. § 1983 because Felling enjoyed a constitutional right to be free from physical attacks. Additionally, the lawsuit presented a wrongful termination claim against Indiana University.

At that time, Knight held a homeowners policy procured from the Insurer. On October 2, 2001, Knight notified the Insurer of the Felling lawsuit. On October 19, 2001, the Insurer issued a reservation of rights letter to Knight. The reservation of rights letter provided in pertinent part as follows:

> Please refer to the applicable sections of your policy as outlined below which reads:
>
> SECTION II—LIABILITY COVERAGES
>
> COVERAGE E—Personal Liability
>
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends

> when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.
>
> SECTION II—EXCLUSIONS
>
> 1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to "bodily injury" or "property damage":
>
>    a. Which is expected or intended by one or more "insureds"; (as modified by the HO 01 13 (10/94), SPECIAL PROVISIONS—INDIANA)
>
>    b. Arising out of or in connection with a "business" engaged in by an "insured" . . . (as modified by the 81–3CD (01/98)
>
>    k. Arising out of sexual molestation, corporal punishment or physical or mental abuse;
>
> We further refer you to that section of your policy entitled DEFINITIONS—as modified by form 81–3CD (1/98) HOMEOWNERS AMENDATORY PROVISIONS endorsement which states:
>
> 1. "Bodily injury" means:
>
>    a. "Personal injury"
>
>    b. Bodily harm, sickness or disease, including required care, loss of services and death that results.
>
> 2. "Occurrence" means an offense or accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy in:
>
>    a. "Bodily injury", or
>
>    b. "Property damage"

---

he "shoved" Felling. (App. 143.)

**3.** In his deposition, Assistant Coach Pat Knight described the incident as a "bump" which caused Felling to fall back into the

television. (App. 137.) Assistant Coach John Treloar described the incident as "Ron was pushed . . . lost his balance and went against the television." (App. 134.)

3. "Personal injury" means injury arising out of one or more of these offenses:

    a. False arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction; or

    b. Libel, slander, defamation of character or invasion of privacy[.]

This is a reservation of rights letter which is being issued to you because there may be no "bodily injury" or "property damage" caused by an "occurrence" as defined by the policy. Further, the exclusions mentioned above may apply.

(App. 83–85.)

During February of 2002, Indiana University was dismissed as a defendant in the federal lawsuit, and Felling filed an amended complaint against Knight.[4] On July 29, 2002, the Insurer took a recorded statement from Knight, in which he reported that he "bumped into Felling," they "collided as [Knight] jumped up," and "[Felling] couldn't have been hurt." (App. 341–42.)

On August 26, 2002, the Insurer issued a letter to Knight denying coverage for the Felling lawsuit and "disclaim[ing] any and all obligation to Mr. Knight for this matter." (App. 86.) In particular, the Insurer indicated that the "business exclusion," together with "other exclusions cited" defeated coverage. (App. 88.) On August 30, 2002, the Felling lawsuit against Knight was settled upon Knight's payment of $25,000.00 and his admission that he shoved Felling in anger.

On August 26, 2004, Knight filed a complaint seeking indemnification from the Insurer and Indiana University. The Insurer moved for summary judgment, and

Knight filed a cross-motion for summary judgment on the Insurer's duty to defend. On June 14, 2006, the trial court granted summary judgment to the Insurer upon Knight's claims for breach of contract, bad faith, negligence, and punitive damages. The claim against Indiana University remained pending. However, on July 12, 2006, the trial court, finding no just cause for delay, entered a final and appealable judgment as to the discrete claims against the Insurer. Knight now appeals.

## Discussion and Decision

### A. Summary Judgment Standard of Review

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 461 (Ind.2002). We consider only those facts that the parties designated to the trial court. *Id.* The Court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Id.*

A trial court's order on summary judgment is cloaked with a presumption of validity; the party appealing from a grant of summary judgment must bear the burden of persuading this Court that the decision was erroneous. *Indianapolis Downs, LLC v. Herr,* 834 N.E.2d 699, 703 (Ind.Ct. App.2005), *trans. denied.* We may affirm the grant of summary judgment upon any basis argued by the parties and supported by the record. *Payton v. Hadley,* 819 N.E.2d 432, 437 (Ind.Ct.App.2004).

---

4. The record on appeal does not include a    copy of the Amended Complaint.

Although the appellant bears the burden of persuasion, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Indiana Health Centers, Inc. v. Cardinal Health Systems, Inc.*, 774 N.E.2d 992, 999 (Ind.Ct.App.2002). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *U–Haul Int'l, Inc. v. Nulls Mach. & Mfg. Shop*, 736 N.E.2d 271, 274 (Ind.Ct.App.2000), *trans. denied.* The fact that cross-motions are filed does not alter our standard of review. *KPMG, Peat Marwick, LLP v. Carmel Fin. Corp., Inc.*, 784 N.E.2d 1057, 1060 (Ind.Ct.App.2003).

### B. Insurance Contract Standard of Review

The interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question that is particularly well suited for summary judgment. *Estate of Sullivan v. Allstate Ins. Co.*, 841 N.E.2d 1220, 1223 (Ind. Ct.App.2006). Although ambiguities are construed in favor of the insured, clear and unambiguous policy language will be given its ordinary meaning. *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind.Ct. App.1991). Moreover, the power to interpret contracts does not extend to changing their terms, and insurance policies in this state will not be given an unreasonable construction to provide added coverage. *Id.* An insurer is bound by the plain, ordinary meaning of the words as viewed from the perspective of the insured. *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 440 (Ind.Ct.App.2000), *trans. denied.*

### C. Analysis

Knight claims that summary judgment was improperly granted to the Insurer because (1) the trial court erroneously applied an insurance coverage exclusion involving "expected or intended bodily injury" although Felling had no "bodily injury," (2) there is a genuine issue of material fact concerning whether Knight acted with the intent to cause injury; and (3) the trial court erroneously concluded as a matter of law that the Insurer had not breached its duty to defend.

The first two of these contentions concern an exclusion from coverage, specifically, the exclusion of Section II, 1(E)(a) providing that "bodily injury" or "property damage" is excluded from coverage if it is "expected or intended" by an insured. Knight claims this exclusion has no application here, because Felling sustained no bodily injury. However, the crux of whether there is coverage under the Policy is not "exclusion" but rather "inclusion."

The Policy provides coverage for an "occurrence" that results in "bodily injury" or "property damage." (App. 39.) Property damage is not at issue. "Bodily injury" is defined as "personal injury" or "bodily harm, sickness or disease, including required care, loss of services and death that results." (App. 39.) "Personal injury" is an injury arising out of "false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction, libel, slander, defamation of character or invasion of privacy." (App. 39.) The summary judgment record supports a sole conclusion: Felling did not sustain bodily harm, sickness or disease as a result of the event. Nor was he the victim of false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction, libel, slander, defamation of character or invasion of privacy. Thus, there was no "occurrence" of "bodily injury" as defined in the Policy so as to bring the event into the realm of Policy coverage.

The conduct to which Knight has admitted, and for which he provided monetary compensation to Felling, constitutes the common law torts of assault and battery. An assault creates an apprehension of imminent harmful or offensive contact, while battery is the intentional harmful or offensive contact. *Cullison v. Medley,* 570 N.E.2d 27, 30 (Ind.1991). A touching, however slight, may constitute an assault and battery. *Cohen v. Peoples,* 140 Ind. App. 353, 355, 220 N.E.2d 665, 667 (1966). However, the interests protected by tort law are broader than those protected by the Policy. The Insurer was free to define what tortious acts, if any, it would insure against.

Moreover, the incident arose in Knight's practice of his profession. Section II(1)(E)(b) excludes injury or damage "arising out of or in connection with a business engaged in by an insured." "Business" is defined to include "trade, profession or occupation." (App. 170.) The trial court properly concluded that the Insurer's denial of coverage did not constitute a breach of contract and thus there was no viable bad faith or punitive damages claim.

Knight also claims, even if the Insurer was not obligated to indemnify Knight, it breached its duties to reasonably investigate and to defend the Felling lawsuit. Thus, he argues that he is entitled to reimbursement for the costs of his legal representation. The trial court found that the Insurer did not breach a duty to defend, having properly relied upon the settlement agreement between Knight and Felling. However, the denial letter was issued on August 26, 2002, and Knight settled the Felling lawsuit on August 30, 2002. Knight correctly contends that the Insurer, in reaching a decision to provide no defense, could not have reasonably relied upon a subsequent settlement.

An insurer's duty to defend its insured is broader than its duty to indemnify. *Liberty Mutual Ins. Co. v. OSI Industries, Inc.,* 831 N.E.2d 192, 198 (Ind.Ct. App.2005), *trans. denied.* We determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Id.* If it is revealed that a claim is clearly excluded under the policy, then no defense is required. *Id.*

It is the nature of the claim, not its merit, which establishes the insurer's duty to defend. *Trisler,* 575 N.E.2d at 1023. Consequently, if it is determined that an insurer has a contractual duty to defend a suit based upon risks it has insured, the insurer will not be relieved of that obligation, regardless of the merits of the claim. *Id.* An insurer who concludes that a claim is "patently outside the risks covered by the policy" and elects not to defend an insured in the underlying tort action under a reservation of rights does so at his peril. *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce,* 762 N.E.2d 1227, 1230 (Ind.2002). This is because the insurer will be "bound at least to the matters necessarily determined in the lawsuit." *Id.*

As a matter of course, when the insured is charged a premium, he or she has an expectation of a defense in the face of a lawsuit for a contemplated risk. However, in the continuum of potential claims, one may arise which is so far removed from the focus of the parties' contract that there is no question a reasonable claims manager could deny coverage and refuse to defend against it, although the refusal is at the Insurer's peril with regard to collateral estoppel. *See State Farm Fire,* 762 N.E.2d at 1230.

■ Felling brought a Section 1983 claim against Knight alleging that Knight attacked him. The Insurer conducted an interview with Knight before denying coverage and refusing to defend the Felling lawsuit. Knight reported that the incident provoking the lawsuit happened at his workplace, involved himself and a co-worker, and was prompted by the co-worker's criticism of his professional abilities.

Knight also reported that he rose up during a verbal encounter and bumped Felling, but Felling was not hurt. Knight's account that he "bumped" Felling might be interpreted as either a report of an accidental occurrence or a report of a rude touching amounting to battery. Regardless, it was a workplace incident that resulted in no bodily injury. A reasonable claims manager would be able to discern the lack of contractual obligation at that juncture. The Insurer did not need to rely upon the subsequently mediated settlement between Knight and Felling to determine that the event was patently outside the Policy coverage. The Insurer is entitled to judgment as a matter of law upon Knight's claims that it breached its duties to reasonably investigate and to defend the Felling lawsuit.

### Conclusion

In light of the foregoing, the Insurer is entitled to summary judgment upon Knight's breach of contract, bad faith, negligence, and punitive damages claims.

Affirmed.

RILEY, J., concurs.

SHARPNACK, J., concurs in result.