FILED

Jun 10 2020, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Ann Marie Waldron
Waldron Law
Indianapolis, Indiana

Michael E. Simmons
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana

Robert P. Thomas
Thomas Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

J. Blake Hike
Larry L. Barnard
Carson LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gregory Smith, *As Assignee of Nolan Clayton*,

*Appellant-Plaintiff,*

v.

Progressive Southeastern Insurance Company,

*Appellee-Defendant,*

June 10, 2020

Court of Appeals Case No.
19A-PL-1959

Appeal from the Marion Superior
Court

The Honorable James A. Joven,
Judge

Trial Court Cause No.
49D13-1809-PL-35757

**Robb, Judge.**

## Case Summary and Issues

This action arises from a single-vehicle accident involving Gregory Smith and Nolan Clayton, who was driving Smith's vehicle. Smith sued Clayton to recover for his personal injuries and property damage and Smith's insurer, Progressive Southeastern Insurance Company ("Progressive"), arranged for legal counsel to defend Clayton pursuant to a reservation of rights. After a verdict was entered against Clayton for $21 million, Clayton irrevocably assigned to Smith any legal rights, claims, and causes of actions that Clayton may have against Progressive and the attorneys who represented him, Metzger Rosta, LLC ("Metzger"). Subsequently, Smith sued Progressive for bad faith. This case is before us because the trial court dismissed Smith's second amended complaint ("Second Complaint") against Progressive and denied his motion for joinder of parties or consolidation of actions. Smith now appeals, raising several issues for our review which we consolidate and restate as: 1) whether the trial court erred in dismissing Smith's Second Complaint and 2) whether the trial court erred in denying Smith's motion for joinder of parties or consolidation of actions. Concluding the trial court did not err in either respect, we affirm.

## Facts and Procedural History

Smith and Clayton were co-workers at the Stacked Pickle and eventually became friends. On February 17, 2016, Smith drove his truck, with Clayton as a passenger, to a company event at the Stacked Pickle. The two spent several hours drinking. In the early morning hours on February 18, Smith gave Clayton

permission to drive Smith's truck. Clayton lost control of the truck and ran into a tree. Smith was ejected from the truck, suffered a broken neck, and was rendered a quadriplegic. As discussed below, multiple lawsuits have resulted from the accident.

### *Tort Action*

[3]     On June 15, 2016, Smith filed a complaint against Clayton to recover for personal injury and property damage. Progressive intervened to provide legal representation to Clayton pursuant to a reservation of rights[1] and arranged for Metzger to provide a defense for Clayton. Progressive also filed a Declaratory Judgment Action regarding coverage questions (discussed below) and moved to stay the Tort Action pending the resolution of the Declaratory Judgment Action. The trial court denied the motion to stay and the Tort Action proceeded. On December 11, 2017, a jury found in favor of Smith in the amount of $35 million, found Clayton sixty percent at fault, and therefore awarded Smith a judgment of $21 million against Clayton. The trial court also granted Smith a portion of prejudgment interest that he requested and added it to the judgment against Clayton.[2]

---

[1] The reservation of rights letter is not in the record. But it appears to be undisputed that Progressive did reserve its rights when it assumed Clayton's defense in the Tort Action.

[2] Clayton appealed the judgment but was unsuccessful. *Clayton v. Smith*, 113 N.E.3d 693 (Ind. Ct. App. 2018), *trans. denied*.

[4]     On July 31, 2018, Clayton executed an Assignment of Legal Rights and Causes of Action ("the Assignment"), pursuant to which Clayton irrevocably assigned to Smith any legal rights, claims, causes of action and legal theories and recoveries against Progressive and Metzger to the extent that the rights and claims were assignable. *See* Appellant's Appendix, Volume 2 at 185. Clayton executed the Assignment so he could satisfy part of the judgment that he owed Smith. In exchange for the Assignment, Smith agreed not to pursue recovery from any of Clayton's personal assets.

### *Declaratory Judgment Action*

[5]     At the time of the accident, Progressive insured Smith under a policy which provided coverage for liability, medical payments, underinsured motorists, damage to the covered vehicle, and roadside-assistance. "Insured person" under the policy included anyone who had permission to use the covered vehicle. *Id*., Vol. 4 at 140. A provision of the policy also stated that Progressive did not have a duty to defend an insured person for bodily injury to Smith. In January 2017, while the Tort Action was pending, Progressive filed a Complaint for Declaratory Judgment against Smith and Clayton requesting a determination that, according to the terms of the policy, Smith was not entitled to coverage under the policy's underinsured motorist or bodily injury provisions for injuries sustained in the accident and that Progressive was not obligated to defend or indemnify Clayton as a permissive driver of Smith's truck because Smith could not recover under the policy for Clayton's negligence. *See id*., Vol. 3 at 21.

Ultimately, the case came before this court on Progressive's appeal arguing that Smith was not entitled to bodily injury liability coverage and that it had no duty to defend or indemnify Clayton. The Duty to Defend Declaration in the policy stated, "Coverage under this Part I, *including our duty to defend*, will not apply to any insured person for . . . *bodily injury* to [Smith] or a relative[.]" *Id.*, Vol. 4 at 141 (emphasis added). We concluded that Smith was not entitled to bodily injury coverage and that Progressive did not have (and has never had) a duty to defend Clayton. *Progressive Se. Ins. Co. v. Smith*, 140 N.E.3d 292, 298 (Ind. Ct. App. 2020).

## *Malpractice Action*

In October 2018, after Clayton executed the Assignment, he filed a Malpractice Action against Progressive and Metzger. *See* Appellant's App., Vol. 7 at 87. In July 2019, the trial court granted Progressive's motion to dismiss Clayton's complaint against it, finding that "[a]n insurer such as Progressive cannot practice law or be liable for legal malpractice by attorneys" and "Progressive cannot be liable for a claim of improper legal services, whether to Clayton or Smith." *Id.* at 93. At Clayton's request, the trial court certified its order of dismissal, but we denied Clayton's motion for leave to bring a permissive interlocutory appeal. At all times relevant to this litigation, the Malpractice Action has remained pending as to Metzger.

### The Current Bad Faith Action[3]

[8]    In September 2018, pursuant to the Assignment, Smith filed a complaint against Progressive. Smith also filed a motion for joinder of parties or, in the alternative, consolidation of actions. Smith sought to join Clayton as a plaintiff and Metzger as a defendant in his action against Progressive. In the alternative, Smith requested to consolidate Clayton's Malpractice Action with his own against Progressive because the two cases represent the two halves of the Assignment: "To the extent the claims are assignable, they are contained in [Smith's] Complaint. To the extent they are not assignable, they are included in the [Malpractice Action]." *Id.*, Vol. 4 at 17.[4] Progressive filed a motion to dismiss Smith's complaint, alleging that it failed to state a claim upon which relief could be granted, and also opposed Smith's request for joinder of parties or consolidation. The trial court granted Progressive's motion, dismissed Smith's complaint, and denied Smith's motion for joinder of parties or consolidation.[5]

[9]    Smith then filed the Second Complaint on January 21, 2019, which alleged, in relevant part:

---

[3] In naming these various actions, we have used the designations first used in *Progressive Se. Ins. Co.*, 140 N.E.3d at 295-96.

[4] Contemporaneously with Smith's motion, Clayton filed a motion to intervene in the Bad Faith Action and to consolidate his Malpractice Action with the Bad Faith Action. At the time the motions were filed in November 2018, Progressive was still a party to the Malpractice Action.

[5] Clayton's motion to intervene was also denied.

49. Progressive is liable for the actions and inactions of the attorneys hired by it because it directed those actions by and through its oversight of the case and the Policy Manual.

50. Progressive is liable for the actions and inactions of the attorneys hired by it because it admitted it had a duty to defend Clayton and such duty is a non-delegable, contractual duty making it liable for the actions of any independent contractors.

51. The acts, omissions, conduct and activities of Progressive, directly and/or by and through its agents, servants and/or selected independent contractors in conjunction with and under the control and direction of Progressive, in handling, processing and conducting the contractual and non-delegable and/or voluntarily assumed duties and responsibilities of Progressive related to the claims of [Smith] against Clayton and/or as assignee of Clayton were negligent, grossly negligent, oppressive, willful and wanton, performed in bad faith, conducted for improper reasons and purposes and for the benefit of Progressive at the expense of Clayton, and for purposes of obstruction, delay and concealment from [Smith] as Clayton's assignee, and constitute a contractual breach of the duty of good faith and fair dealing, a tortious breach of the duty of good faith and fair dealing, negligent claim file handling, negligent hiring and retention, and bad faith.

52. The acts, omissions, conduct and activities of Progressive in handling, processing and conducting the contractual and non-delegable and/or voluntarily assumed duties and responsibilities of Progressive related to the claims of [Smith] against Clayton and/or as assignee of Clayton were performed and occurred, in part, upon advice of counsel.

53. As a direct and proximate result of the aforementioned actions, omissions, activities and conduct on the part of

Progressive, its agents, servants and/or selected independent contractors, a judgment was rendered against Clayton in the [Tort Action] in the amount of Twenty-One Million Dollars ($21,000,000.00), together with pre-judgment interest in the amount of $714,574.35, all of which continues to accrue post-judgment interest at the rate of 8% per annum as Progressive, by and through its agents, servants and/or selected independent contractors continue to wrongfully obstruct and impede Clayton's rights and/or the rights of [Smith] as assignee of Clayton to pursue available remedies against Progressive and/or its agents, servants and/or independent contractors under the control and direction of Progressive.

54. Progressive, in addition to its own direct liability, is also vicariously liable for the acts, omissions, conduct and activities of its agents, servants and/or selected independent contractors including . . . Metzger Rosta . . . which resulted in the [Tort Action] Judgment, pre-judgment interest thereon, post-judgment interest thereon, post-judgment obstruction actions and delays, and all other damages which have been incurred by Clayton and/or [Smith] as the assignee of Clayton.

*Id*. at 126-27.[6] Again, Progressive filed a motion to dismiss, arguing that Smith's Second Complaint raised no new issues or causes of action, and essentially sought to re-litigate the same issues as the dismissed complaint. *See id*., Vol. 5 at 39-40. The trial court held a hearing on the motion to dismiss after which it

---

[6] Smith's Second Complaint raised allegations similar to those in his first amended complaint but included additional factual allegations and legal theories such as voluntary assumption of a duty to defend competently and in good faith. *See* Appellant's Brief at 11; *see also* Appellant's App., Vol. 2 at 131-41.

granted Progressive's motion and dismissed the Second Complaint. The trial court found, in relevant part:

> Paragraphs 49 through 54 of Smith's [Second Complaint] set forth why Smith believes Progressive is liable to Smith. The Court restates and reformulates the contentions of those paragraphs in this manner: Progressive is (allegedly) liable to Smith for the negligent and improper acts and omissions of the attorneys Progressive provided to Clayton for his defense in [the Tort Action] against Clayton. . . . Smith seeks recovery of damages from Progressive due to the representation Clayton's attorneys provided in defense of Smith's lawsuit against Clayton.
>
> Under the assignment of rights from Clayton to Smith, Smith *might* have been able to recover against Progressive for Smith's personal injuries sustained in the truck crash. But, because the insurance policy . . . Progressive issued to Smith contained specific terms that excluded Smith from coverage for his own bodily injuries under that policy, Smith could not. That policy exclusion was partly the reason why the Court dismissed Smith's First Amended Complaint. With his [Second] Complaint, Smith attempts recovery from Progressive by asserting what amounts to a claim of improper legal services provided to Clayton.
>
> But Smith cannot assert such a claim. Under Indiana law, negligence claims involving legal malpractice are not assignable. Moreover, because legal malpractice claims are not assignable, Indiana's courts have found that a non-client may not sue an insurer for vicarious liability for the conduct of lawyers hired to defend an insured, even when the non-client has obtained an assignment. *See Querrey & Harrow, Ltd. v. Transcontinental Ins. Co.*,

885 N.E.2d 1235[, 1236] (Ind. 2008).[7] Smith does not have any direct claim for negligence against Progressive or the lawyers that Progressive hired to defend Clayton. He cannot bring such an action, as he does with his [Second] Complaint, because Clayton could not assign his rights to bring such claims to Smith. Furthermore, Smith had already [made] the same or similar claims in paragraphs 42 through 45 of his First Amended Complaint, a complaint that this Court has already considered and dismissed.

Appealed Order at 5-7 (some citations omitted).[8] Smith now appeals.

# Discussion and Decision

## I. Dismissal

### A. Standard of Review

The trial court granted Progressive's motion to dismiss Smith's Second Complaint for failure to state a claim upon which relief could be granted. *See* Ind. Trial Rule 12(B)(6). A motion to dismiss under Trial Rule 12(B)(6) tests the legal sufficiency of the plaintiff's claim, not the facts supporting it. *Hoosier Ins. Co. v. Riggs*, 92 N.E.3d 685, 687 (Ind. Ct. App. 2018). Therefore, a Rule 12(B)(6) motion presents a legal question that we review de novo. *Ward v. Carter*, 90 N.E.3d 660, 662 (Ind. 2018), *cert. denied*, 139 S.Ct. 240 (2018). When

---

[7] The parties disagree about the import of this case, but because we review motions to dismiss de novo, we need not specifically address arguments about its applicability.

[8] Our citation to the Appealed Order is based on the .pdf pagination.

ruling on a motion to dismiss, we will view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the non-movant's favor. *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015). We may affirm a dismissal under Rule 12(B)(6) if it is sustainable on any basis in the record. *Freels v. Koches*, 94 N.E.3d 339, 342 (Ind. Ct. App. 2018). That is, if the complaint states a set of facts that, even if true, would not support the requested relief, we will affirm the dismissal. *Id*.

## B. Second Complaint

[11] Smith argues that the trial court erroneously dismissed his Second Complaint. Specifically, he contends that the trial court mischaracterized the nature of his claims against Progressive as attorney malpractice, rather than claims for vicarious liability, breach of duty to defend, and bad faith.[9] We will discuss each in turn.

### 1. Vicarious Liability

[12] Smith first contends that the trial court incorrectly dismissed his Second Complaint because the complaint alleged sufficient facts to show that

---

[9] Smith also briefly mentions that the trial court overlooked his claims for negligent claims handling and negligent selection and retention of attorneys. *See* Appellant's Br. at 30; *see also* Appellant's App., Vol. 4 at 126-27. However, Smith fails to develop a cogent argument that the trial court erred in dismissing his Second Complaint by overlooking these claims. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning."). Therefore, this issue is waived. *Burnell v. State*, 110 N.E.3d 1167, 1171 (Ind. Ct. App. 2018).

Progressive is vicariously liable for Metzger's actions or inactions that contributed to a personal injury judgment against Clayton.

[13] Generally, a plaintiff claiming negligence must show a duty owed to the plaintiff by the defendant, a breach of that duty, and a compensable injury proximately caused by the breach. *Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 84 (Ind. Ct. App. 2018), *trans. denied*. Vicarious liability creates an "indirect legal responsibility" whereby "a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 147 (Ind. 1999) (citation omitted). Indiana courts employ various legal doctrines to hold people vicariously liable, including the non-delegable duty doctrine and the doctrine of respondeat superior. *Id*.

[14] Smith's vicarious liability claim in his Second Complaint against Progressive contends that but for Metzger's actions or inactions, Clayton would not have incurred a substantial personal injury judgment. However, Smith did not plead specific facts to support his assertion and show how a smaller judgment would have resulted if Metzger had represented Clayton differently. Smith's contention, without more, is not sufficient at the pleading stage to state a claim for any relief. *See Hoosier Ins. Co.*, 92 N.E.3d at 687. Regardless, the nature of Smith's complaint against Progressive for vicarious liability is nothing more than a negligence claim that involves alleged legal malpractice by Metzger – a claim that is not assignable under Indiana law. *See Rosby Corp. v. Townsend, Yosha, Cline & Price*, 800 N.E.2d 661, 665 (Ind. Ct. App. 2003) (discussing the

bright-line rule drawn by our supreme court holding that "legal malpractice claims are not assignable") (quoting *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 339 (Ind. 1991)), *trans. denied*.

[15] In *Picadilly*, a bar owed a judgment to Charles Colvin, who was injured by another patron of the bar. The bar filed a claim against its attorneys, Raikos and Thomas, alleging that the attorneys' negligence resulted in the judgment against them. Raikos and Thomas moved for, and were granted, summary judgment. The bar thereafter assigned to Colvin its legal malpractice claim against Raikos and Thomas. Colvin immediately filed a motion to correct error with the trial court, challenging the grant of summary judgment to Raikos and Thomas. Raikos and Thomas opposed the motion on the grounds that the assignment of the legal malpractice claim was invalid. The trial court denied the motion to correct error and, on appeal, we affirmed the trial court's grant of summary judgment. *Picadilly, Inc. v. Raikos*, 555 N.E.2d 167, 170 (Ind. Ct. App. 1990). On transfer, our supreme court also affirmed the trial court, concluding that legal malpractice claims are not assignable. *Picadilly*, 582 N.E.2d at 339. In addressing this new question of law, our supreme court agreed with a California Court of Appeal decision describing the public policy issues involved:

> The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. . . . The almost certain end result of merchandizing such

causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

*Id*. at 342 (quoting *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 397, 133 Cal.Rptr. 83, 87 (1976)).

[16] Although the *Picadilly* court discussed the assignment of a legal malpractice claim directly against attorneys and not against an insurer that hired the attorneys, the principle is the same. The court was mainly concerned with the impact of assigning *any* legal malpractice claims – "the need to preserve the sanctity of the client-lawyer relationship, and the disreputable public role reversal that would result during the trial of assigned malpractice claims" – not *how* legal malpractice claims were assigned or *who* would be subject to litigation from the assignment. *Picadilly*, 582 N.E.2d at 342. Applying the above principle to the facts here, we see no reason for a different result. The nature of the vicarious liability claim in Smith's Second Complaint still served as a legal malpractice claim against Metzger; that is, it alleged that Progressive is liable for Metzger's actions or inactions in litigating the Tort Action, contributing to a substantial judgment against Clayton. Indiana law might support a respondeat

superior claim by the insured – in this case, Clayton – against the insurer in this context, but it does not support such a claim being assigned to and litigated by Smith. Because Smith's vicarious liability claim against Progressive stemmed from Metzger's alleged legal malpractice, the trial court did not err in dismissing his Second Complaint on this issue.

## 2. Breach of Duty to Defend

Smith next contends that the trial court erroneously dismissed his Second Complaint because he made multiple allegations that Progressive breached its contractual duty to defend Clayton. In Indiana, the duty to defend is broader than coverage liability. *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). Consequently, if it is determined that an insurer has a contractual duty to defend, the insurer will not be relieved of that obligation, regardless of the claim. *Id.* After an insurer has made an independent determination that it has no duty to defend, it must either clarify its obligation to defend the insured through a declaratory judgment action or defend its insured under a reservation of rights. *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 902 (Ind. Ct. App. 1992), *trans. denied*.

When determining whether a duty to defend exists, the insurer must look to the allegations in the complaint coupled with the facts known to the insurer after reasonable investigation. *American States Ins. Co. v. Aetna Life & Cas. Co.*, 177 Ind. App. 299, 311, 379 N.E.2d 510, 518 (1978). Accordingly, we may consider the evidentiary materials offered by the parties to show coverage or exclusion. *Trisler*, 575 N.E.2d at 1023. No defense is required if the pleadings or

investigation indicate that a claim is outside coverage limits or excluded under the policy. *Id*. Although ambiguities are construed in favor of the insured, clear and unambiguous policy terms will be given their ordinary meaning. *Id*.

[19] The issue of Progressive's duty to defend has already been resolved in the Declaratory Judgment Action. *Progressive Se. Ins. Co.*, 140 N.E.3d at 298. A provision of Smith's policy stated, "Coverage under this Part I, *including our duty to defend*, will not apply to any insured person for . . . *bodily injury* to [Smith] or a relative." Appellant's App., Vol. 4 at 141 (emphasis added). Progressive's Declaratory Judgment Action sought a declaration that, based on this provision, it was not obligated to defend or indemnify Clayton, a permissive driver of Smith's truck. Despite the above-quoted policy provision, the trial court granted summary judgment in favor of Smith. On appeal, we concluded that Progressive did not have (and has never had) a contractual duty to defend Clayton. *Progressive Se. Ins. Co.*, 140 N.E.3d at 298. We noted that "it is eminently reasonable to conclude that if Smith is not entitled to coverage for his bodily injuries, Progressive is not required to defend Clayton from tort claims related to those bodily injuries." *Id*. Because the policy clearly and unambiguously excluded coverage for bodily injury suffered by Smith, Progressive did not have a contractual duty to defend Clayton.

[20] Smith argues that even if Progressive did not have a duty to defend, it chose to hire attorneys to defend Clayton and therefore, it was required to proceed in good faith by providing competent defense counsel for Clayton. However, our supreme court has noted, "To judicially impose liability under a theory of

gratuitously assumed duty is unwise policy and should be cautiously invoked only in extreme circumstances involving a negligently performed assumed undertaking[.]" *Yost v. Wasbash College*, 3 N.E.3d 509, 518 (Ind. 2014). Smith has not shown in his Second Complaint how Clayton's defense attorneys were incompetent or negligent in conducting Clayton's defense. And we will not speculate as to the quality of Metzger's representation of Clayton in the absence of specific allegations. Because Progressive did not have a contractual duty to defend Clayton, the trial court did not err in dismissing Smith Second Complaint on this issue.

### 3. Bad Faith

Next, Smith argues that the trial court erred in dismissing his Second Complaint because he made numerous allegations that Progressive acted in bad faith beyond issues of coverage. Specifically, Smith alleges that Progressive "directed the actions of the attorneys, failed to cooperate in the production of documents to Clayton, acted in its own best interests at the expense of Clayton, and acted with improper purposes." Appellant's Br. at 30. Progressive contends, and we agree, that Smith did not plead any facts that would support his claim that Progressive acted in bad faith. Indiana has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993).

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the

> obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Id*. at 519. Proving bad faith amounts to showing more than bad judgment or negligence: "it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. . . . [I]t contemplates a state of mind affirmatively operating with furtive design or ill will." *Oxendine v. Pub. Serv. Co. of Ind., Inc.*, 423 N.E.2d 612, 620 (Ind. Ct. App. 1980).

[22] Smith's Second Complaint does not present any facts that would indicate that Progressive failed to meet the obligation of good faith and fair dealing in any of the four ways described in *Erie*. Nor does it designate any evidence that would suggest that Progressive acted with a dishonest purpose, ill will, or engaged in any conscious wrongdoing. Therefore, Smith's allegations in his Second Complaint, without more, cannot serve as the basis for a bad faith claim. Thus, the trial court did not err in dismissing Smith's Second Complaint on this issue.

## II.  Joinder of Parties or Consolidation of Actions

### A.  Joinder

[23] Smith argues that the trial court erred when it denied his motion for joinder of parties. The determination of whether parties should be joined rests within the trial court's discretion, and we will reverse a trial court's decision only for an abuse of that discretion. *McCoy v. Like*, 511 N.E.2d 501, 504 (Ind. Ct. App. 1987), *trans. denied*. An abuse of discretion occurs when the trial court's decision

is clearly against the logic and effect of the facts and circumstances before it. *Brademas v. S. Bend Cmty. Sch. Corp.*, 783 N.E.2d 745, 750 (Ind. Ct. App. 2003), *trans. denied*.

[24]     Indiana Trial Rules 19 and 20 govern the joinder of parties. Trial Rule 19 provides the requirements for mandatory joinder:

> A person who is subject to service of process *shall* be joined as a party in the action if:
>
> (1) in his absence complete relief cannot be accorded among those already parties; or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
>
>> (a) as a practical matter impair or impede his ability to protect that interest, or
>>
>> (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Ind. Trial Rule 19(A) (emphasis added). Smith sought to join Clayton as a mandatory party-plaintiff in the Bad Faith Action pursuant to Trial Rule 19. However, Clayton *irrevocably* assigned to Smith all claims, legal rights, or causes of action that he may have had against Progressive and Metzger to the extent that they were assignable in return for Smith not recovering a portion of the $21 million judgment from his personal assets. Thus, Clayton had relinquished any

and all claims against Progressive and there was no reason that, in Clayton's absence, Smith could not be afforded complete relief, that is, a judgment against Progressive. T.R. 19(A)(1). Nor did Clayton claim any interest whatsoever in Smith's complaint against Progressive due to the Assignment. T.R. 19(A)(2); *see also Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010) ("As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in or to the property or property rights that are comprehended within the terms of the assignment.") (quotation omitted), *trans. denied*. Accordingly, the trial court did not abuse its discretion in denying Smith's motion to join Clayton as a necessary party under Trial Rule 19.

[25] Smith also sought to join Clayton as a permissive party-plaintiff and Metzger as permissive party-defendants to the Bad Faith Action pursuant to Trial Rule 20(A). Trial Rule 20 governs the permissive joinder of parties and provides in pertinent part:

> (1) All persons may join in one [1] action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.
>
> (2) All persons may be joined in one [1] action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences and if any

question of law or fact common to all defendants will arise in the action.

Ind. Trial Rule 20(A)(1) & (2). The purpose of Trial Rule 20(A) is to promote trial convenience, expedite claims, and avoid multiple lawsuits. *United of Omaha v. Hieber*, 653 N.E.2d 83, 87 (Ind. Ct. App. 1995), *trans. denied*.

[26] It was not error for the trial court to deny joinder of either party under Trial Rule 20. First, with respect to subsection (1), Smith and Clayton did not, jointly or severally, "assert any right to relief" against Progressive because Clayton assigned any rights he would have had against Progressive to Smith. Second, with respect to subsection (2), no "right to relief" has been "asserted" against Metzger because Smith had no such "right to relief." T. R. 20(A)(2). The legal malpractice claim was not assignable pursuant to *Picadilly* and was only available to Clayton personally. Thus, Smith has failed to establish that Metzger should be joined as a party under Trial Rule 20(A)(2). *See McCoy*, 511 N.E.2d at 504 (stating the right of relief must be asserted against the defendants jointly, severally, or in the alternative). Because neither Clayton nor Metzger could properly be joined as parties under Trial Rule 20, the trial court did not abuse its discretion when it denied Smith's motion for joinder of parties.

## B. Consolidation

[27] Smith next argues that the trial court erred by denying his request for consolidation of his Bad Faith Action and Clayton's Malpractice Action. Indiana Trial Rule 42(A) provides that a trial court may order actions to be consolidated when the actions involve common questions of law or fact. The

decision to consolidate actions is purely discretionary and will be overturned only when an abuse of discretion is established. *Bodem v. Bancroft*, 825 N.E.2d 380, 382 (Ind. Ct. App. 2005). "A party must show resultant prejudice as a prerequisite to establishing that a trial court erred in denying a motion under Trial Rule 42." *In re Paternity of Tompkins*, 518 N.E.2d 500, 507 (Ind. Ct. App. 1988).

[28]  Smith requested the trial court consolidate the Bad Faith Action and the Malpractice Action against Progressive and Metzger because the cases involved common questions of law and fact. But whether or not common questions of law or fact exist, Smith failed to demonstrate that he suffered prejudice as a result of the trial court's denial of his motion. Smith now argues that he was prejudiced because Progressive took contradictory positions that resulted in the dismissal of Smith's claim against Progressive in this action and Clayton's claim against Progressive in the Malpractice Action; namely, asserting in this action that Clayton's claims were not assignable and asserting in the Malpractice Action that Clayton assigned his claims to Smith. However, Progressive's assertions were not contradictory, but consistent. First, in the Bad Faith Action, Progressive correctly stated that Smith's negligence claims based on legal malpractice were not assignable. *See* Appellant's App., Vol. 5 at 40 (Progressive noting in its motion to dismiss that "Indiana law does not recognize claims brought by third parties for vicarious liability for the conduct of counsel hired to defend the insured. Because negligence claims against attorneys are not assignable, and because [Smith] does not have privity with the

lawyers that Progressive paid to defend . . . Clayton, [Smith] cannot sue Progressive for the conduct of those lawyers"); *see also Picadilly, Inc.*, 582 N.E.2d at 339. Progressive never argued that Smith's claims of bad faith and breach of duty to defend were not assignable. Instead, it argued that it had not acted in bad faith and could not be liable for the breach of a duty to defend which it did not owe. *See* Appellant's App., Vol. 5 at 40. The trial court dismissed only Smith's *legal malpractice claims* because those claims were not assignable. Second, in the Malpractice Action, Progressive argued that Clayton irrevocably assigned to Smith any claims for bad faith and breach of duty to defend and therefore, Clayton could not bring claims against it. We see no contradiction in Progressive's assertions as Smith contends and thus, Smith has failed to show any "resultant prejudice" from the trial court's denial of Smith's motion to consolidate. *In re Paternity of Tompkins*, 518 N.E.2d at 507. Therefore, the trial court did not abuse its discretion in denying Smith's motion to consolidate actions.

# Conclusion

[29] Smith's Second Complaint on its face does not support the relief he seeks and therefore, the trial court did not err in dismissing Smith's Second Complaint. We also conclude that the trial court did not err when it denied Smith's motion for joinder of parties or consolidation of actions. Accordingly, the decision of the trial court is affirmed.

[30] Affirmed.

Bradford, C.J., and Altice, J., concur.